Donald E. BARNETT, Plaintiff,

v.

Kenneth S. APFEL,[1] Commissioner
of Social Security, Defendant.

No. 96–CV–1959.

United States District Court,
N.D. New York.

July 9, 1998.

1. Effective September 29, 1997, Kenneth S. Apfel, acting Commissioner. FRCP 25(d)(1).

Joy A. Blumkin, Ithaca, NY, for Plaintiff.

Thomas J. Maroney, U.S. Attorney, Northern District of New York, Syracuse, NY (William H. Pease, Assistant U.S. Attorney, of counsel), for Defendant.

### MEMORANDUM–DECISION and ORDER

HURD, United States Magistrate Judge.

This matter is brought pursuant to §§ 205(g) & 1631(b)(3) of the Social Security Act ("Act"), as amended, 42 U.S.C. §§ 405(g) & 1383(c)(3), to review a final determination of the Commissioner of Social Security ("Commissioner"), denying the plaintiff's claim of Social Security Disability Insurance. The parties have filed their briefs, including the Administrative Record on Appeal, and the matter has been submitted to this Court without oral argument.

## I. PROCEDURAL HISTORY

The plaintiff initially applied for disability benefits in 1979, but was denied. Without appealing, the plaintiff re-applied for disability benefits in 1989, but was again denied. In July 1993, the plaintiff re-applied again but once more was denied. Plaintiff's request for reconsideration of this determination was unsuccessful, precipitating a request for a hearing before an Administrative Law Judge ("ALJ"). On December 7, 1995, following a hearing before ALJ Joachim J. Volhard, it was determined that prior to September 30, 1989, the plaintiff had the work capacity for a full range of sedentary work, was capable of performing his past relevant work as a draftsman, and was therefore not entitled to disability benefits as defined under the Act.

On November 1, 1996, the Appeals Council rejected plaintiff's request for review of the December 7, 1995 hearing decision. Consequently, the ALJ's decision became the final decision of the Commissioner. Plaintiff now brings this appeal. This court must determine if the findings of the Commissioner of Social Security are supported by substantial evidence.

## II. FACTS

This Court adopts the facts set forth in the plaintiff's brief with any exceptions as noted.

## III. CONTENTIONS

Plaintiff contends that the ALJ's decision was erroneous for the following reasons:

1. The ALJ erred in failing to give the opinion of the plaintiff's treating physician proper weight.

2. The ALJ erred in discrediting the opinion of the examining clinical psychologist concerning the diagnosis of plaintiff's mental illness and the severity and extent of plaintiff's functional limitations.

3. The ALJ's determination that the plaintiff's subjective complaints of pain were not credible was not supported by substantial evidence.

## IV. DISCUSSION

### 1. Standard of Review

A court's review of the Commissioner's final decision is limited to determining whether there is substantial evidence in the record to support such decision. *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir.1991). Substantial evidence is "such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Rivera*, 923 F.2d at 967 (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from it's weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir.1988)(citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456 (1951), *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir.1983)). However, a reviewing court must not substitute its interpretation of the administrative record so long as there exists substantial support for the decision in the record. *Williams*, 859 F.2d at 258.

Additionally, the scope of review involves determining *both* whether the Commissioner has applied the correct legal standard and whether the determination is supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir.1987). Thus, where there is a reasonable basis for doubting whether the Commissioner applied the appropriate legal standard, even if the ultimate decision may be arguably supported by substantial evidence, the Commissioner's decision may not be affirmed. *Johnson*, at 986.

### 2. Five–Step Disability Determination

The regulations of the Commissioner mandate that the ALJ follow a five step evaluation process to determine whether an individual is disabled.[2] *See Singletary v. Apfel*, 981 F.Supp. 802, 805 (W.D.N.Y.1997)(citing 20 C.F.R. § 404.1520; *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir.1982)). Step One requires the ALJ to determine whether the claimant is presently engaged in substantial gainful activity ("SGA"). § 404.1520(b). If a claimant is engaged in SGA, they will not be considered disabled. If the claimant is not engaged in SGA, Step Two requires the ALJ to determine whether the claimant has a severe impairment. § 404.1520(c). If the claimant is found to suffer from a severe impairment, Step Three requires the ALJ to determine whether the claimant's impairment meets or equals an impairment listed in Appendix 1, Subpart P. § 404.1520(d). If the impairment meets or equals a listed impairment, the claimant is presumptively disabled. *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir.1984). If the claimant is not presumptively disabled, at Step Four the ALJ must consider whether claimant's residual functional capacity ("RFC") precludes the performance of his past relevant work. § 404.1520(e). At Step Five, the ALJ determines whether the claimant can do any other work. § 404.1520(f).

The claimant has the burden of showing that he cannot perform past relevant work. *Ferraris*, 728 F.2d at 584. However, once the claimant meets that burden, the Commissioner can deny benefits only by showing, by specific reference to medical evidence, that the claimant can perform some less demanding work. *See White v. Secretary of HHS*,

---

**2.** A claimant will be considered disabled if they demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). In addition, the claimant's

> Physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his past relevant work, but cannot considering his age, education, and work expe-

rience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

Therefore, plaintiff must not only carry a medically determinable impairment, but an impairment so severe as to prevent him from engaging in any kind of substantial gainful work which exists in the national economy.

910 F.2d 64, 65 (2d Cir.1990); *Ferraris,* 728 F.2d at 584. In making this showing the ALJ must consider the claimant's RFC, age, education, past work experience, and transferability of skills to determine if the claimant can perform other work existing in the national economy. § 404.1520(f); *see New York v. Sullivan,* 906 F.2d 910, 913 (2d Cir. 1990); *see also Ferraris,* 728 F.2d at 585 (four factors used to determine if claimant can perform other work: age, education, physical ability, and work experience) (citing 42 U.S.C. 423(d)(2)(A)).

In the instant case, the ALJ found that the plaintiff met the requirements of Step One because he has not engaged in substantial gainful employment since January 12, 1984. (Tr. 57). The ALJ also determined that the plaintiff suffered from degenerative disc disease and chronic depression. *Id.* However, in applying the Third Step, the ALJ determined that the plaintiff does not have an impairment or combination of impairments listed in, or medically equivalent to one listed in Appendix 1, Subpart P, Regulations No. 4. *Id.* At Step Four, the ALJ determined that the plaintiff was capable of performing his past relevant work as a draftsman. (Tr. 58). Therefore, before reaching Step Five, the ALJ concluded that the plaintiff was not disabled at any time prior to September 30, 1989, as defined under the Act. *Id.* The ALJ's findings at the Fourth Step are in contention.

### 3. Step Four—Determination of Claimant's Ability to Perform Past Relevant Work

In the Step Three analysis, plaintiff was not found to have an impairment listed in Appendix 1, Subpart P, Regulations No. 4. Thus, plaintiff was not presumptively disabled, and in Step Four the ALJ was required to determine whether plaintiff's residual functional capacity (RFC) precluded performance of past relevant work.

### a. Residual Functional Capacity Standard of Review

RFC is what a claimant is capable of doing despite his or her impairments. 20 C.F.R. § 404.1545(a). The RFC is determined by considering all relevant evidence, consisting, inter alia, of physical abilities; symptoms including pain;[3] and descriptions, including that of the claimant, of limitations which go beyond the symptoms. § 404.1545. Physical abilities are determined by evaluation of exertional and nonexertional limitations in performing a certain category of work activity on a regular and continuing basis. § 404.1545; *see* 404.1567; 404.1569a.

Thus, to determine whether a claimant can do a certain category of work, the ALJ must determine plaintiff's strength limitations, or exertional capacity, which include the ability to sit, stand, walk, lift, carry, push and pull. § 404.1569a(a). Nonexertional limitations include "difficulty performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching." § 404.1569a(c)(vi). RFC can only be established when there is substantial evidence of each physical requirement listed in the regulations. *LaPorta v. Bowen,* 737 F.Supp. 180, 183 (N.D.N.Y.1990). In assessing RFC, the ALJ's findings must specify the functions plaintiff is capable of performing; conclusory statements regarding plaintiff's capacities are not sufficient. *Ferraris,* 728 F.2d at 587; *LaPorta,* 737 F.Supp. at 183; *Sullivan v. Secretary of HHS,* 666 F.Supp. 456, 460 (W.D.N.Y.1987); *see* § 404.1546. The RFC is then used to determine particular types of work a claimant may be able to perform. § 404.1545(a).

Jobs in the national economy are classified by their physical exertion requirements as "sedentary," "light," "medium," "heavy," and "very heavy." § 404.1567. Sedentary work requires the ability to lift no more than ten pounds, to sit for extended periods of time, and to walk and stand occasionally.[4]

---

**3.** Symptoms such as pain are considered when determining the RFC as well as in determining whether a claimant has a severe impairment, and at all remaining steps in the disability determination. 20 C.F.R. § 404.1529(a), (d).

**4.** Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Jobs are sedentary if walking and standing are required occasionally and other sed-

§ 404.1567(a). When a claimant's impairment and related symptoms, such as pain, only impose exertional limitations and the claimant's vocational profile is listed in an Appendix 2 Rule, the Rule is applied directly to determine disability status. § 404.1569a(b). However, when combined exertional and non-exertional limitations exist, the Appendix 2 Rules provide only a framework for disability determination unless a rule directs a conclusion of disability. § 404.1569a(d). Thus, if a claimant is incapable of the full range of a certain category of work the evaluation of disability must be made on an individual basis rather than by a mechanical application of the Appendix 2 Rules. *Nelson v. Bowen*, 882 F.2d 45, 46 (2d Cir.1989).

 Throughout the evaluation process, the ALJ must consider subjective complaints of pain. § 404.1529(a), (d). The ALJ, though, is "not obliged to accept without question the credibility of such subjective evidence." *Marcus*, 615 F.2d at 27; *Peterson v. Gardner*, 391 F.2d 208, 209 (2d Cir.1968); *Spicer v. Califano*, 461 F.Supp. 40, 47–48 (N.D.N.Y. 1978). The ultimate question, however, is whether the claimant's affliction did, in view of their individual physical and mental make-up, cause symptoms which became so intensely severe that, as they testified, forced them to quit working. *Marcus*, 615 F.2d at 27. Further, "[i]t is well settled that 'a claimant's subjective evidence of pain is entitled to great weight' where . . . it is supported by objective medical evidence." *Simmons v. United States R.R. Retirement Bd.*, 982 F.2d 49, 56 (2d Cir.1992)(quoting *Rivera v. Schweiker*, 717 F.2d 719, 725 (2d Cir.1983) (citations omitted)). An ALJ rejecting subjective testimony concerning pain and other symptoms "must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his determination is supported by substantial evidence." *Brandon v. Bowen*, 666 F.Supp. 604, 608 (S.D.N.Y.1987); *see Valente v. Secretary of HHS*, 733 F.2d 1037 (2d Cir.1984).

Age, education, past work experience, and transferability of skills are vocational factors to be considered. A person under age fifty is considered a "younger person," whose age will not "seriously affect [a claimant's] ability to adapt to a new work situation." § 404.1563(b). Education as a vocational factor is seen to indicate the ability to meet job requirements such as reasoning, communication, and arithmetic. § 404.1564(a). A person with an education above high school is generally considered capable of semi-skilled through skilled work. § 404.1564(b)(4). Similarly, recent work experience may indicate an ability to do a similar kind of work. § 404.1565(a).

### b. The ALJ's Finding That Plaintiff is Capable of Performing Past Relevant Work

In the instant case, the ALJ determined that the plaintiff had the residual functional capacity to perform his past relevant work as a draftsman. (Tr. 58). In making this determination, the ALJ did not accord controlling weight to the opinion of plaintiff's treating physician. (Tr. 56).

### 1. Treating Physician Rule

 The opinion of a treating physician is considered controlling where it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence. § 404.1527(d)(2); *Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir.1993). Where the treating physician's diagnosis is not considered controlling, reasons are to be provided. *Schisler*, 3 F.3d at 567. Accordingly, in determining what weight the ALJ should accord to noncontrolling medical opinions, various factors need to be considered, including the existence of an examining relationship, the existence of a treatment relationship, supportability, consistency, specialization of the physician, and any other relevant factors. *Id.* Failure to follow this standard is a failure to apply the proper legal standard and is grounds

---

entary criteria are met. 20 C.F.R. § 404.1567(a). In particular, a sedentary job is defined as one which involves six hours of sitting and two hours

of standing and walking in an eight hour workday. *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).

for reversal. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir.1987).

In an attempt to discredit the treating physician's opinion, the ALJ reported that the plaintiff visited the treating physician only one time between October 1983 and July 1993. (Tr. 56). The ALJ further noted that while the treating physician confirmed that the plaintiff had complained of increased pain, clinically there was no evidence of any neurological loss or neurological symptoms. *Id.* Consequently, the ALJ concluded that the lack of any neurological loss and the conspicuous gaps in the treating relationship entitle the treating physician's opinion to only little weight. *Id.* However, this finding departs from the proper legal standard, ignoring whether the treating physician's opinion was first well supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence. As a result, the ALJ's determination inappropriately considers the factors ordinarily used in the process of determining what weight to give medical opinions that have already been determined not to be controlling. While such factors are useful in determining how much weight to accord a noncontrolling medical opinion, nevertheless, they do not vitiate the ALJ's responsibility to apply the correct legal standard.

In reviewing the record, it is apparent that the treating physician's opinion is both well supported by medically acceptable clinical and laboratory diagnostic techniques, and also not inconsistent with other substantial evidence. For instance, in 1981, following three years of treatment for severe back pain, the plaintiff was referred to his current treating physician, Dr. Bruce Fredrickson ("Fredrickson"), an orthopedic surgeon.[5] (Tr. 153). Fredrickson treated the plaintiff for back pain between the years of 1981 and 1994. (Tr. 141, 142, 143, 145, 146, 148, 151, 152–153, 227). Beginning with an initial consultation in March 1981, Fredrickson reported that the plaintiff experienced some tenderness to deep palpation over the lower

lumbar sacral region and over the crest of the left ilium. (Tr. 152). In addition, he noted that the plaintiff's left leg was almost a half inch shorter than his right leg. *Id.* Fredrickson's report concluded that the plaintiff was suffering from a muscular ligamentous type of low back pain which might be related to the transitional 5th lumbar vertebrae. *Id.* Therefore, Fredrickson prescribed anti-inflammatory medication, and further suggested that plaintiff continue using his back brace and TENS unit. *Id.*

On September 16, 1982, Fredrickson discussed with the plaintiff the pain relief option of selective facet injections of the transitional vertebrae. (Tr. 150). Although other options were discussed, the plaintiff opted to have the selective facet injections commencing in November of that same year. *Id.* Plaintiff underwent additional facet injections on January 5, 1983, and September 13, 1983. (Tr. 142, 149). On December 1, 1982, x-rays of plaintiff's lumbar spine confirmed that the plaintiff's fifth lumbar vertebrae was partially sacralized. (Tr. 149). In addition, the x-rays showed that the L1 vertebrae was compressed anteriorly, the L3–4 was narrowed with slight retrolisthesis, and there appeared to be a asymmetric collapse of the L3 with the body slightly wider on the left as compared with the right. *Id.* On September 21, 1983, Fredrickson opined that the plaintiff was suffering from recurrent disabling back pain on the basis of degenerative disc disease and congenital abnormalities of the lumbar sacral junction with secondary degenerative changes. (Tr. 145). Although Fredrickson advised against surgery, he did recommend that the plaintiff be admitted into a program for rehabilitation and job retraining. *Id.*

On June 8, 1989, the plaintiff complained of increased and severe pain particularly into the left buttock. (Tr. 148). Although the plaintiff showed no evidence of neurological loss, Fredrickson noted that the x-rays suggested a listhesis at the 3–4 and 4–5 areas. *Id.* Approximately four years later, the plaintiff again visited Fredrickson, complaining of increased pain in the right lumbar

---

**5.** Prior to plaintiff's treatment under Fredrickson, the plaintiff was treated by Dr. William Mckeen ("Mckeen"). Mckeen evaluated the plaintiff with x-rays in 1978 which revealed a partial sacralization of L5 on the left. (Tr. 153).

sacral area especially when walking or standing more than fifteen minutes. (Tr. 146). Additional x-rays and an MRI of the plaintiff's spine on August 17, 1993, evidenced a mild tear of the outeranulus at the L3–4 intervertebral level, resulting in a mild diffuse disc bulge without significant spinal canal stenosis. (Tr. 143). In addition, at the L4–5 and L5–S1 intervertebral levels there was a decreased signal of the intervertebral disc, most likely secondary to degenerative changes. *Id.* Consequently, Fredrickson opined that the plaintiff was experiencing multilevel disc disease and mild bulging at the 3/4 area. (Tr. 146).

Finally, Fredrickson on October 3, 1994, after treating the plaintiff various times between 1981 and 1994, offered a retrospective opinion with respect to the plaintiff's functional capabilities prior to the date that he was last insured. (Tr. 213–215). In particular, Fredrickson reported that the plaintiff was capable of lifting and carrying zero to ten pounds; standing and walking for four hours in an eight hour work day; and sitting for only three hours in an eight hour work day. (Tr. 213–214). Fredrickson further opined that the plaintiff could never climb or balance and occasionally stoop, crouch, kneel, and crawl. (Tr. 214). In addition, Fredrickson indicated that the plaintiff was also limited in working around heights, moving machinery, and temperature extremes. (Tr. 215). As a result, Fredrickson concluded that the plaintiff was totally disabled and incapable of working. *Id.*

With respect to the issue of consistency, the opinion of the plaintiff's treating physician is not inconsistent with other substantial evidence.[6] For example, at the September 13, 1995 hearing, the plaintiff testified that as a result of the pain, he no longer was able to participate in any hobbies such as hunting,

swimming, or bowling. (Tr. 86). Plaintiff further testified that the pain that he began experiencing in 1982 was constant with intermittent episodes of severe pain lasting between six to eight hours. (Tr. 79). In an effort to provide pain relief, plaintiff claimed that he began taking over the counter medication, used a TENS unit and heating pad, and that he received steroid injections from Fredrickson. (Tr. 81, 82). Regardless, plaintiff testified that he continued to have difficulty with reaching, bending, walking, and sitting. (Tr. 82, 84). In addition to the plaintiff's own testimony, an MRI performed on April 24, 1995, supports and corroborates the objective findings of the plaintiff's treating physician. (Tr. 251–252). For instance, the MRI established that the plaintiff experiences degeneration of the intervertebral discs; a loss of disc signal intensity and height in the L5–S1, L4–5, and L3–4 areas; and mild bulging of the annulus at the L3–4 area with mild inferior foraminal narrowing at this level. (Tr. 251). Furthermore, the MRI revealed that there is a desiccation of the intervertebral discs at L1–2 and T12–L1 areas accompanied by end plate irregularities within the L2 and L1 vertebral bodies. *Id.* Such findings are not inconsistent with the findings and opinion of plaintiff's treating physician.

The improper application of the appropriate legal standard juxtaposed with the fact that the opinion of the plaintiff's treating physician is well supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence, compels a reversal and remand of the ALJ's determination.[7] In addition, since Fredrickson's opinion demonstrates that prior to September 30, 1989, the plaintiff was not able to meet the sitting

6. The ALJ failed to mention evidence that was inconsistent with Fredrickson's opinion. While the record contained two individual assessments of plaintiff's residual functional capacity, the ALJ neither cited to these assessments nor relied upon them in making the determination that plaintiff was capable of performing sedentary work.

7. Although the record indicates that the plaintiff suffers from depression, it is unclear whether

this significantly affected the plaintiff's ability to work prior to September 30, 1989. Considering that a psychological impairment was never alleged in the 1993 application for Social Security Disability Insurance or mentioned during the hearing by either the plaintiff or his attorney, it is unlikely that a psychological impairment precluded the plaintiff from performing his past relevant work prior to September 30, 1989.

requirements for sedentary work, remand shall be for the calculation of benefits only.

## V. CONCLUSION

Accordingly, it is

ORDERED that the decision denying the plaintiff disability benefits is REVERSED.

IT IS SO ORDERED.

---

1. Effective September 29, 1997, Kenneth S. Ap-fel, acting Commissioner. FRCP 25(d)(1).