**Brenda F. PARDEE, Plaintiff,**

v.

**Michael J. ASTRUE \*, Commissioner of Social Security, Defendant.**

**No. 05–CV–1595 (NAM/DEP).**

United States District Court, N.D. New York.

July 7, 2009.

---

\* On February 12, 2007, Michael J. Astrue was sworn in as Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d)(1), he is auto- matically substituted for former Commission- er Joanne B. Barnhart as the defendant in this action.

Hinman, Howard & Kattell, LLP, Eugene D. Faughnan, Esq., of counsel, Binghamton, NY, for Plaintiff.

Andrew T. Baxter, Glenn T. Suddaby, United States Attorney for the Northern District of New York, William H. Pease, Esq., of counsel, Syracuse, NY, for Defendant.

## MEMORANDUM–DECISION AND ORDER

NORMAN A. MORDUE, Chief Judge:

### I. INTRODUCTION

Plaintiff Brenda Pardee brings the above-captioned action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, seeking a review of the Commissioner of Social Security's decision to deny her application for disability benefits. This matter was referred to United States Magistrate Judge David E. Peebles for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.3(d). Magistrate Judge Peebles recommended that this Court enter judgment on the pleadings affirming the Commissioner's decision denying disability and dismissing plaintiff's claims. Presently before the Court is plaintiff's objection to the Report and Recommendation.[1]

### II. FACTUAL BACKGROUND

Plaintiff has not objected to the Magistrate Judge's recitation of the background in this case. Accordingly, the Court adopts the portion of the Report and Recommendation entitled "Background" in its entirety:

Plaintiff was born on March 5, 1952; at the time of the hearing in this matter she was fifty-one years old.[2] Administrative Transcript at pp. 108, 462.

Plaintiff is married and lives together with her husband in a home which is located in Bloomville, New York. AT 110, 462–63. While the plaintiff and her husband have children, none currently reside with them. AT 462.

Plaintiff holds a high school general equivalency diploma ("GED"), and additionally is certified as a nursing assistant. AT 111, 148, 226, 463–64. Beyond this plaintiff has had no further specialized educational training, and in particular has taken no college courses. AT 463–64.

For several years prior to March of 1999, plaintiff was employed as a certified nurses aide in the Delaware County Countryside Care Center, a facility apparently funded by Delaware County. AT 111, 148, 224, 465. Plaintiff stopped working in that position, however, after suffering a work related injury on March 26, 1999 caused when a sheet being used by her to lift a patient gave way and ripped. AT 192, 224. As a result of the incident she experienced both a re-injury of her right shoulder, resulting in renewed pain which progressively worsened over time, as well as a sudden onset of pain on the right side of her neck.[3] AT 200.

Following her injury, plaintiff was initially seen by Dr. Hermon Peiris on April 5, 1999, and again three days later. AT 191. In a report submitted in connection with plaintiff's workers' compensation claim stemming from the incident, Dr. Peiris noted that plaintiff demon-

---

1. Defendant has not submitted a response to Plaintiff's Objections.

2. Portions of the administrative transcript filed by the Commissioner and consisting of a compilation of evidence and proceedings before the agency, Dkt. No. 4, will be cited herein as "AT ___."

3. Prior to her March 1999 accident, plaintiff suffered multiple work-related injuries, including one which required surgical repair of a rotator cuff tear on March 16, 1993. AT 224. Plaintiff has also undergone carpal tunnel release surgery, in 1989 for the left hand, and later in 1992 on the right. AT 224. The record does not reflect the existence of any lingering effects of this latter condition.

strated "[m]arked limitation of movement" and that Darvocet and Flexeril were prescribed. AT 191.

Plaintiff was also seen by Dr. William Reiter, beginning on or about May 4, 1999, based upon her complaints of persistent right shoulder pain. AT 198–200. In a report of that first visit, Dr. Reiter notes that x-rays were taken at O'Connor Hospital on April 9, 1999, revealing the residuals of previous arthroscopic and open subacromial decompression and rotator cuff repair, as well as "[d]egenerative changes ... about the right acromioclavicular joint[,]" and "some narrowing of humeral head to acromion space." AT 200. Based upon his examination Dr. Reiter noted plaintiff's history of rotator cuff repair, but indicated that it did not appear to symptomatic, and recorded clinical findings suggesting "a thoracic outlet type syndrome, right." *Id.* X-rays taken on that day of plaintiff's cervical spine area yielded normal results. AT 201. Dr. Reiter initially prescribed a conservative course of treatment which included physical therapy and use of analgesic, muscle relaxant, and anti-inflammatory medications. AT 199.

After determining that the treatment initially prescribed had not yielded improvement in plaintiff's condition, Dr. Reiter referred her to Dr. Anthony Cicoria for a second opinion.[4] AT 255–58. Plaintiff was seen by Dr. Cicoria on March 1, 2000, May 17, 2000, July 18, 2000, and September 13, 2000. AT 255–258. In a chart note of the July 18, 2000 visit, Dr. Cicoria observed that a functional capacity evaluation of the plaintiff had been completed, revealing that at the time she was capable of engaging in "full time of employment in a sedentary

work capacity", as well as recording a belief that vocational rehabilitation was required. AT 256; *see* AT 228–242. In the report of the last visit, which occurred on September 13, 2000, Dr. Cicoria noted that plaintiff had completed vocational rehabilitation and was working three days a week in a "sedentary light duty capacity", additionally reporting that with acupuncture, she had obtained significant pain relief. AT 255.

Based upon her complaints of persistent pain, plaintiff was referred by Dr. Reiter to Dr. Patrick Germain who, based upon his examination, diagnosed the plaintiff as suffering from myofascial pain syndrome, centered in the right upper trapezius, as well as right occipital neuralgia. AT 243–54. Plaintiff was seen by Dr. Germain on six occasions between March 2, 2000 and July 31, 2000, and underwent trigger point injections on those occasions. *Id.* By all accounts those treatments were successful in reducing plaintiff's pain levels, and notes of the last visit on July 31, 2000 reflect that plaintiff was directed to return to the clinic only as needed. AT 243.

(Report and Recommendation, Dkt. No. 8, pp. 213–15).

## III. ADMINISTRATIVE LAW JUDGE'S DECISION

To be eligible for Social Security disability benefits, a claimant must establish "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). There is a five-step analysis for evaluating disability claims:

---

4. It was Dr. Cicoria who performed the earlier surgery to repair plaintiff's rotator cuff tear. AT 200, 258. 3

"In essence, if the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do." The claimant bears the burden of proof on the first four steps, while the Social Security Administration bears the burden on the last step.

*Green–Younger v. Barnhart,* 335 F.3d 99, 106 (2d Cir.2003) (quoting *Draegert v. Barnhart,* 311 F.3d 468, 472 (2d Cir.2002)); *Shaw v. Chater,* 221 F.3d 126, 132 (2d Cir.2000) (internal citations omitted).

In this case, the ALJ found at step one that plaintiff has not engaged in substantial gainful activity since her alleged onset date. AT. 12. At step two, the ALJ determined that plaintiff's right shoulder pain, neck pain and migraine headaches were severe. AT. 12. At step three, the ALJ concluded that plaintiff's impairments neither met nor equaled any impairment listed in Appendix 1 of the Regulations. AT. 12. The ALJ next found that plaintiff retained the residual functional capacity ("RFC") to, "perform a wide limited range of light work in that impose [sic] no limitations on the claimant's ability to stand, sit and walk, and only requires her to occasionally lift up to 10 lbs., does not require climbing, ladders, scaffolds or any other activity that would require her to use her arms, no more than rare overhead reaching with the right dominant upper extremity, no more than occasional reaching in all directions with her right dominant upper extremity and no more than occasional frequent fine manipulations with the right, dominant upper extremity". AT. 17. Therefore, at step four, the ALJ concluded that plaintiff was not capable of meeting the exertional demands of her past relevant work as a certified nursing assistant. AT. 18. Since plaintiff's ability to perform all or substantially all of the requirements of light work was impeded by additional exertional and/or non exertional limitations, the ALJ obtained the testimony of a vocational expert to determine whether there were jobs plaintiff could perform. Based upon the vocational expert's testimony, the ALJ concluded at step five, that there were a significant number of jobs in the regional and national economy that plaintiff could perform, such as work as a counter clerk (photo-finishing), order clerk, furniture rental clerk, callout operator and surveillance systems monitor. AT. 21. The ALJ concluded that plaintiff was not disabled and denied her application for SSI benefits. The Appeals Council denied plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. This action followed.

## IV. REPORT AND RECOMMENDATION

In the Report and Recommendation, Magistrate Judge Peebles found that: (1) the ALJ's determination with regard to plaintiff's RFC was supported by substantial evidence including the opinion of one of plaintiff's treating physicians; (2) the ALJ properly rejected plaintiff's subjective complaints of pain and explained his rationale for doing so; and (3) the ALJ properly utilized the grids as a framework and supplemented with the testimony of a vocational expert to conclude that plaintiff was not disabled. Presently before the Court are plaintiff's objections to the Report and Recommendation.

## V. DISCUSSION

### A. Standard of Review

■ In reviewing a final decision by the Commissioner under 42 U.S.C. § 405, the

Court does not determine *de novo* whether plaintiff is disabled. Rather, the Court must examine the Administrative Transcript to ascertain whether the correct legal standards were applied, and whether the decision is supported by substantial evidence. *See Shaw v. Chater,* 221 F.3d 126, 131 (2d Cir.2000); *Schaal v. Apfel,* 134 F.3d 496, 501 (2d Cir.1998). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Curry v. Apfel,* 209 F.3d 117, 122 (2d Cir.2000) (citing *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)) (internal quotation marks and citation omitted). An ALJ is obligated to develop the record regardless of whether claimant is represented by counsel. *See Shaw,* 221 F.3d at 131 (citations omitted).

■ Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court engages in a *de novo* review of any part of a Magistrate's Report and Recommendation to which a party specifically objects. Failure to object timely to any portion of a Magistrate's Report and Recommendation operates as a waiver of further judicial review of those matters. *See Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Small v. Sec. of Health & Human Servs.,* 892 F.2d 15, 16 (2d Cir.1989). The Court will address Plaintiff's objections accordingly.

Plaintiff objects to the Magistrate's Report and Recommendation on four grounds: (1) that the Magistrate Judge erroneously found that the ALJ's RFC determination was largely congruent with the findings of Dr. Reiter; (2) the ALJ improperly discounted the opinions of Dr. Peiris; (3) the ALJ's RFC determination is not supported by substantial evidence; and (4) the ALJ presented an improper hypothetical to the vocational expert and therefore, the Commissioner failed to sustain his burden at Step 5 of the sequential analysis. (Dkt. No. 9).

## B. Treating Physician

■ Plaintiff alleges that the ALJ improperly discounted the opinions of plaintiff's treating physicians, Dr. Reiter and Dr. Peiris. Under the Regulations, a treating physician's opinion is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *see also Rosa v. Callahan,* 168 F.3d 72, 78–79 (2d Cir.1999); *Schisler v. Sullivan,* 3 F.3d 563, 567 (2d Cir.1993); *see also Filoramo v. Apfel,* 1999 WL 1011942, at *7 (E.D.N.Y.1999) (holding that the ALJ properly discounted the assessment of a treating physician as it was inconsistent with opinions of other treating and consulting physicians). The ALJ is required to accord special evidentiary weight to the opinion of the treating physician, as long as the treating physician's opinion is supported by medically acceptable techniques, results from frequent examinations, and is supported by the administrative record. *Schnetzler v. Astrue,* 533 F.Supp.2d 272, 285 (E.D.N.Y.2008). An ALJ may refuse to consider the treating physician's opinion controlling if he is able to set forth good reason for doing so. *Barnett v. Apfel,* 13 F.Supp.2d 312, 316 (N.D.N.Y.1998). When an ALJ refuses to assign a treating physician's opinion controlling weight, he must consider a number of factors to determine the appropriate weight to assign, including:

(I) the frequency of the examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's atten-

tion that tend to support or contradict the opinion.

20 C.F.R. 404.1527(d)(2). The opinion of the treating physician is not afforded controlling weight where the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts. *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir.2004); *see also Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir.2002) (treating physician's opinion is not controlling when contradicted "by other substantial evidence in the record"); 20 C.F.R. § 404.1527(d)(2). Further, an opinion that is not based on clinical findings will not be accorded as much weight as an opinion that is well-supported. 20 C.F.R. § 404.1527(d)(3), 416.927(d)(3); *see also Stevens v. Barnhart*, 473 F.Supp.2d 357, 362 (N.D.N.Y.2007). Similarly, the less consistent an opinion is with the record as a whole, the less weight it is to be given. *Stevens*, 473 F.Supp.2d at 362; *see also Otts v. Comm'r of Social Sec.*, 249 Fed. Appx. 887, 889 (2d Cir.2007) (an ALJ may reject such an opinion of a treating physician "upon the identification of good reasons, such as substantial contradictory evidence in the record").

### 1. Opinions of Dr. Reiter

The Magistrate Judge found that "the RFC evaluation of plaintiff's circumstances recorded by Dr. Reiter, her orthopedic surgeon, are generally consistent with the ALJ's findings". Plaintiff objects to this conclusion and relies upon the definition of "light work" as set forth in the Regula-

tions.[5] Plaintiff alleges that light work involves lifting no more than 20 pounds occasionally and 10 pounds frequently and, in contrast, Dr. Reiter limited plaintiff to lifting only 10 pounds occasionally and less than 10 pounds frequently. (Dkt. No. 9, p. 2). Therefore, plaintiff claims that the ALJ's findings were not entirely consistent with Dr. Reiter's conclusions and

On June 11, 2002, Dr. Reiter completed a Medical Source Statement of Ability to Do Work–Related Activities (Physical). Dr. Reiter opined that plaintiff could occasionally lift and/or carry 10 pounds and frequently lift and/or carry less than 10 pounds. AT. 322. Dr. Reiter concluded that plaintiff was able to stand, walk and sit without restriction. AT. 322. Moreover, Dr. Reiter found that plaintiff was unlimited in her ability to push/pull with her left arm, and could occasionally balance, kneel, crouch and crawl. AT. 323. Dr. Reiter noted that plaintiff had limitations with regard to her ability to push and pull with her right dominant upper extremity and concluded that plaintiff had limited ability to reach in all directions overhead and a limited ability for gross manipulations but an unlimited ability for fine manipulations. AT. 324. Dr. Reiter also noted that plaintiff had no visual, communicative or environmental restrictions. AT. 324.

The ALJ "accept[ed] the conclusions of Dr. Reiter" and found that plaintiff had the RFC:

> of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.
>
> 20 C.F.R. § 404.1567(b).

**5.** Light work is defined as:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable

to perform a wide limited range of light work in that impose [sic] no limitations on the claimant's ability to stand, sit and walk, and only requires her to occasionally lift up to 10 lbs., does not require climbing, ladders, scaffolds or any other activity that would require her to use her arms, no more than rare overhead reaching with the right dominant upper extremity, no more than occasional reaching in all directions with her right dominant upper extremity and no more than occasional frequent fine manipulations with the right, dominant upper extremity.

AT. 17.

■ Upon a review of the record, the Court finds that the ALJ applied the appropriate weight to Dr. Reiter's opinions and the Court agrees with the Magistrate Judge's conclusion that the ALJ's RFC assessment is "largely congruent" with Dr. Reiter's opinions. The ALJ's RFC assessment is entirely consistent with Dr. Reiter's opinions and therefore, plaintiff's objection lacks merit.

## 2. Opinions of Dr. Peiris

Plaintiff also contends that the ALJ improperly rejected Dr. Peiris' opinions. Plaintiff does not offer any argument nor does plaintiff cite to any caselaw in support of this claim. However, in plaintiff's prior Memorandum of Law, plaintiff argued that Dr. Peiris "agreed with the RFC Assessment performed by Mr. Mansfield, P.T., in finding that [ ] plaintiff was capable of less than sedentary work".

With regard to Mr. Mansfield's assessment and Dr. Peiris' opinion, the ALJ concluded:

In finding the claimant capable of performing a wide range of light work as outlined above, the Administrative Law Judge's [sic] carefully considered a residual capacity evaluation for the claimant completed by physical therapist, Mr.

R. Mansfield, PT. As pointed out by the claimant's attorney, the opinion of a physical therapist is not recognized in the regulations as being an appropriate medical specialist. The Administrative Law Judge further finds that the tepid endorsement of Mr. Mansfield's opinion regarding the claimant's residual functional capacity as given by the claimants treating primary care physician, Herman [sic] Peiris, M.D. pursuant to a letter by the physician dated January 21, 2003 in which he states that he had reviewed the report on medical assessment of ability to do work-related activities completed by Todd Mansfield in connection with the claimants Social Security claim and "I would tend to agree with his findings" is of little probative value since Dr. Peiris did not personally identifying [sic] function by function the claimant's abilities to perform work related activities, and specifically the physical condition or diagnoses that would limit each function.

AT. 19–20. The ALJ further noted that there was no indication that Dr. Peiris ever received Mansfield's full report where Mansfield stated that he suspected plaintiff was not "putting forth a full effort during testing". AT. 20. The ALJ discounted Mansfield's opinion and found the opinion of Dr. Reiter, "more persuasive".

After a review of the record, the Court finds that the ALJ properly applied the Regulations and afforded the appropriate weight to Mansfield's opinion and thus, to Dr. Peiris' opinion. Mansfield was plaintiff's physical therapist. As such, the ALJ was not required to afford his opinion controlling weight and adequately set forth the reasons for discrediting his opinion. *See Diaz v. Shalala*, 59 F.3d 307, 313 (2d Cir.1995). Plaintiff does not object to that conclusion or to the weight the ALJ afforded to Mansfield's opinion.

■ The ALJ noted that Dr. Peiris gave a "tepid endorsement" to Mansfield's opinion. Upon a review of the record, the Court finds that the ALJ properly afforded little weight to Dr. Peiris' opinions and provided adequate reasons for doing so. First, the ALJ was required to examine the consistency of Dr. Peiris' opinion with the record as a whole. *See Sinda v. Comm'r of Social Sec.*, 2004 WL 1305882, at *10–11 (N.D.N.Y.2004). A review of the record reveals that Mansfield's opinion, and thus, Peiris' opinion, was unsupported and contrary to the opinion rendered by Dr. Reiter and other medical opinions of record. Second, the ALJ noted that Dr. Reiter was the plaintiff's treating orthopedic surgeon and therefore, his opinion fell "squarely within the realm of his expertise". Under the Regulations, an ALJ will generally give "more weight to the opinion of a specialist about medical issues related to his or her area of specialty." 20 C.F.R. § 416.927(d)(5); *Matos ex rel. Mota v. Barnhart*, 2007 WL 943654, at *11 (S.D.N.Y.2007); *see also Sutherland v. Barnhart*, 322 F.Supp.2d 282, 291 (E.D.N.Y.2004) (concluding that the ALJ has discretion to question the weight of a physicians findings based on his lack of specialty in a particular area). Finally, the ALJ noted that Reiter's opinion was based upon a "long-term, therapeutic relationship with the claimant". A review of the record reveals that plaintiff continuously treated with Dr. Peiris from March 1999 until April 2003. However, plaintiff only complained of right arm/shoulder and neck pain on three occasions—twice in April 1999 and once in September 2002. AT. 352–353, 365. Dr. Peiris' notations from those visits are devoid of any reference to any physical limitations. In April 1999, Dr. Peiris merely stated that plaintiff should remain out of work until April 27th and prescribed Naprosyn and Flexeril. AT. 352. Dr. Peiris' notes of plaintiff's September 2002 are also devoid of any

conclusions regarding plaintiff's limitations. AT. 365. Accordingly, Dr. Peiris' "agreement" with Mr. Mansfield's conclusions is wholly contradictory to Dr. Peiris' treatment notes.

Accordingly, this Court concurs with the Magistrate Judge that the ALJ's decision to reject the opinions of Dr. Peiris was supported by substantial evidence.

## C. Residual Functional Capacity

The ALJ determined that plaintiff has the residual functional capacity to perform a significant range of light work. AT. 21. Plaintiff objects to this finding reiterating the argument that the ALJ improperly rejected and/or discounted the opinions of plaintiff's treating physicians. (Dkt. No. 9, p. 3). As discussed above, the ALJ afforded the proper weight to the opinions of plaintiff's treating physicians.

■ Residual functional capacity is:

"what an individual can still do despite his or her limitations. . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."

*Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims ("SSR 96–8p"), 1996 WL 374184, at *2 (S.S.A. July 2, 1996)). In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 404.1545(a). To be considered

capable of performing a full or wide range of light work, a claimant must have the ability to do substantially all of [the required] activities. *Martone v. Apfel,* 70 F.Supp.2d 145, 153 (N.D.N.Y.1999) (citing §§ 404.1567(b), 416.967(b)).

■ As previously discussed, the ALJ's RFC determination is supported by the opinion of plaintiff's treating orthopedic surgeon. Moreover, plaintiff's ability to perform light work is further supported by her testimony during the hearing. Plaintiff testified that she was able to shower, dress, cook, grocery shop and do some housework. AT. 17, 471. Plaintiff also testified that she was able to use a computer to "surf the net" and shop online and that she babysat for her granddaughter. AT. 17, 472.

Thus, the Court is satisfied that the ALJ employed the correct legal standards and substantial evidence exists to support the ALJ's decision with regard to plaintiff's RFC to perform light work.

### D. Vocational Expert

Plaintiff alleges that the vocational expert was presented with an improper hypothetical based upon the ALJ's RFC. Plaintiff objects to the ALJ's reliance upon the jobs cited by the vocational expert and alleges that the based upon the Dictionary of Occupational Titles, each of the four jobs cited require the need to use the upper extremities. Plaintiff claims that Dr. Reiter acknowledge plaintiff's limitation of use with her upper extremity and therefore, reliance upon those four jobs was misplaced. (Dkt. No. 9, p. 4–5).

■ At the fifth step of the sequential evaluation of disability, the Commissioner bears the responsibility of proving that plaintiff is capable of performing other jobs existing in significant numbers in the national economy in light of plaintiff's residual functional capacity, age, education, and past relevant work. 20 C.F.R.

§§ 416.920, 416.960. Ordinarily, the Commissioner meets his burden at this step "by resorting to the applicable medical vocational guidelines (the grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2 (1986)." *Bapp v. Bowen,* 802 F.2d 601, 604 (2d Cir.1986). Sole reliance on the grids is inappropriate where the guidelines fail to describe the full extent of a claimant's limitations. *Id.* at 606. For example, use of the grids as the exclusive framework for making a disability determination may be precluded where, as here, plaintiff's physical limitations are combined with non-exertional impairments which further limit the range of work he can perform. *Pratts v. Chater,* 94 F.3d 34, 39 (2d Cir.1996). In these circumstances, the Commissioner must "introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform." *Bapp,* 802 F.2d at 603.

■ A hypothetical question that does not present the full extent of a claimant's impairments cannot provide a sound basis for vocational expert testimony. *Bosmond v. Apfel,* 1998 WL 851508, at *8 (S.D.N.Y. 1998) (citation omitted); *see also De Leon v. Secretary of Health and Human Servs.,* 734 F.2d 930, 936 (2d Cir.1984). If a hypothetical question does not include all of a claimant's impairments, limitations and restrictions, or is otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion of no disability. *Melligan v. Chater,* 1996 WL 1015417, at *8 (W.D.N.Y. 1996).

■ The "[p]roper use of vocational testimony presupposes both an accurate assessment of the claimant's physical and vocational capabilities, and a consistent use of that profile by the vocational expert in determining which jobs the claimant may still perform." *Lugo v. Chater,* 932 F.Supp. 497, 503 (S.D.N.Y.1996). Further,

there must be "substantial evidence to support the assumption upon which the vocational expert based his opinion." *Dumas v. Schweiker*, 712 F.2d 1545, 1554 (2d Cir.1983).

In this case, the ALJ asked the vocational expert whether there were any jobs existing in substantial numbers that a person with plaintiff's vocational and educational background, and with the following limitations could perform:

> capable of lifting up to 10 pounds occasionally. Is unable to climb anything like ladders or scaffolding where the use of her arms would be involved. There are no standing or sitting limitations. There are some restrictions on the right upper extremity (right hand dominant) and that they could only rarely do any overhead reaching. They could only occasionally reach in other directions with the right upper extremity. And only occasionally make repetitive use of the right upper extremity. AT. 482–484.

The vocational expert responded that a person with this set of assumptions could perform several jobs, including counter-clerk (photo finishing), furniture clerk, call-out operator and surveillance system monitor. AT. 484–486. The expert stated that the jobs of counter-clerk (photo finishing) and furniture clerk were light based on standing and required lifting/carrying of less than 10 pounds. AT. 485. The positions of call-out operator and surveillance system monitor were sedentary. AT. 486–487.

■ Having reviewed the record, the Court finds that the hypothetical submitted to the vocational expert is supported by substantial evidence. In this case, the ALJ presented the vocational expert with plaintiff's RFC which the ALJ based upon Dr. Reiter's opinions. As previously discussed, the ALJ applied the appropriate

weight to the treating physicians' opinions and the RFC is based upon substantial evidence. Thus, the Court concludes that the hypothetical posed to the vocational expert is supported by the record.

The Court further finds plaintiff's additional objections to be without merit. Plaintiff claims that the jobs cited by the vocational expert "demonstrate the need to use the upper extremity" and therefore, reliance upon those jobs was misplaced. As previously discussed, the RFC determination and hypothetical posed to the expert were supported by substantial evidence, including Dr. Reiter's opinions. Indeed, the hypothetical posed to the expert included "only occasional" overhead reaching. Moreover, the Court agrees with the Magistrate Judge's conclusion that this argument was "devoid of evidentiary or legal support" and that plaintiff offered, "naked assertion that the jobs . . . would out of necessity require usage of upper extremities". (Dkt. No. 8, p. 222). Accordingly, the Court concludes that the ALJ applied the appropriate legal standards and properly relied upon the testimony of the vocational expert.

## VI. CONCLUSION

Based upon the foregoing, and the reasons stated in the Report and Recommendation, it is hereby

**ORDERED** that the Report and Recommendation of Magistrate Judge David E. Peebles is **ADOPTED** in its entirety; and it is further

**ORDERED** that the complaint is **DISMISSED.**

**IT IS SO ORDERED.**

BRENDA F. PARDEE, Plaintiff,

vs.

MICHAEL J. ASTRUE, Commissioner of Social Security,[1] Defendant.

---

1. Plaintiff's complaint, which was filed on

December 23, 2005, named Jo Anne B. Barn-

*REPORT AND RECOMMENDATION*

DAVID E. PEEBLES, United States Magistrate Judge.

Plaintiff Brenda F. Pardee, who suffers from various medical ailments including, principally, migraine headaches and a condition affecting her right shoulder and neck, has commenced this proceeding seeking judicial review of an agency determination that she is not disabled, within the meaning of the Social Security Act, and thus denying her application for disability insurance benefits. In support of her challenge plaintiff maintains that the findings of the administrative law judge ("ALJ") assigned by the agency to hear and determine the matter, to the affect that she is not disabled, was the product of improper rejection of contrary opinions of her treating physicians and of her subjective testimony regarding the limitations presented by her conditions, and further that the ALJ's reliance upon the testimony of a vocational expert, who opined that notwithstanding her limitations there is available work which plaintiff is capable of performing, was flawed since it was based upon hypothetical questions which do not approximate her medical condition and resulting limitations.

Having carefully reviewed the record in the light of plaintiff's arguments, applying the requisite deferential standard, I find that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence. Accordingly, I recommend that defendant's motion for judgment on the pleadings dismissing plaintiff's administrative challenge to the Commissioner's determination be granted.

## I. BACKGROUND

Plaintiff was born on March 5, 1952; at the time of the hearing in this matter she was fifty-one years old.[2] Administrative Transcript at pp. 108, 462. Plaintiff is married and lives together with her husband in a home which is located in Bloomville, New York. AT 110, 462–63. While the plaintiff and her husband have children, none currently reside with them. AT 462.

Plaintiff holds a high school general equivalency diploma ("GED"), and additionally is certified as a nursing assistant. AT 111, 148, 226, 463–64. Beyond this plaintiff has had no further specialized educational training, and in particular has taken no college courses. AT 463–64.

For several years prior to March of 1999, plaintiff was employed as a certified nurses aide in the Delaware County Countryside Care Center, a facility apparently funded by Delaware County. AT 111, 148, 224, 465. Plaintiff stopped working in that position, however, after suffering a work-related injury on March 26, 1999 caused when a sheet being used by her to lift a patient gave way and ripped. AT 192, 224. As a result of the incident she experienced both a re-injury of her right shoulder, resulting in renewed pain which progressively worsened over time, as well as a sudden onset of pain on the right side of her neck.[3] AT 200.

---

hart, the former Commissioner of Social Security, as the defendant. On February 12, 2007, Michael J. Astrue took office as Social Security Commissioner. He has therefore been substituted as the named defendant in this matter pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, and no further action is required in order to effectuate this change. *See* 42 U.S.C. § 405(g).

**2.** Portions of the administrative transcript filed by the Commissioner and consisting of a compilation of evidence and proceedings before the agency, Dkt. No. 4, will be cited herein as "AT ___."

**3.** Prior to her March, 1999 accident, plaintiff suffered multiple work-related injuries, including one which required surgical repair of a rotator cuff tear on March 16, 1993. AT 224. Plaintiff has also undergone carpal tun-

Following her injury, plaintiff was initially seen by Dr. Hermon Peiris on April 5, 1999, and again three days later. AT 191. In a report submitted in connection with plaintiff's workers' compensation claim stemming from the incident, Dr. Peiris noted that plaintiff demonstrated "[m]arked limitation of movement" and that Darvocet and Flexeril were prescribed. AT 191.

Plaintiff was also seen by Dr. William Reiter, beginning on or about May 4, 1999, based upon her complaints of persistent right shoulder pain. AT 198–200. In a report of that first visit, Dr. Reiter notes that x-rays were taken at O'Connor Hospital on April 9, 1999, revealing the residuals of previous arthroscopic and open subacromial decompression and rotator cuff repair, as well as "[d]egenerative changes . . . about the right acromioclavicular joint[,]" and "some narrowing of humeral head to acromion space." AT 200. Based upon his examination Dr. Reiter noted plaintiff's history of rotator cuff repair, but indicated that it did not appear to symptomatic, and recorded clinical findings suggesting "a thoracic outlet type syndrome, right." *Id.* X-rays taken on that day of plaintiff's cervical spine area yielded normal results. AT 201. Dr. Reiter initially prescribed a conservative course of treatment which included physical therapy and use of analgesic, muscle relaxant, and anti-inflammatory medications. AT 199.

After determining that the treatment initially prescribed had not yielded improvement in plaintiff's condition, Dr. Reiter referred her to Dr. Anthony Cicoria for a second opinion.[4] AT 255–58. Plaintiff was seen by Dr. Cicoria on March 1, 2000, May 17, 2000, July 18, 2000, and September 13, 2000. AT 255–258. In a chart note of the July 18, 2000 visit, Dr. Cicoria observed that a functional capacity evaluation of the plaintiff had been completed, revealing that at the time she was capable of engaging in "full time of employment in a sedentary work capacity", as well as recording a belief that vocational rehabilitation was required. AT 256; *see* AT 228–242. In the report of the last visit, which occurred on September 13, 2000, Dr. Cicoria noted that plaintiff had completed vocational rehabilitation and was working three days a week in a "sedentary light duty capacity", additionally reporting that with acupuncture, she had obtained significant pain relief. AT 255.

Based upon her complaints of persistent pain, plaintiff was referred by Dr. Reiter to Dr. Patrick Germain who, based upon his examination, diagnosed the plaintiff as suffering from myofascial pain syndrome, centered in the right upper trapezius, as well as right occipital neuralgia. AT 243–54. Plaintiff was seen by Dr. Germain on six occasions between March 2, 2000 and July 31, 2000, and underwent trigger point injections on those occasions. *Id.* By all accounts those treatments were successful in reducing plaintiff's pain levels, and notes of the last visit on July 31, 2000 reflect that plaintiff was directed to return to the clinic only as needed. AT 243.

## II. *PROCEDURAL HISTORY*

### A. *Proceedings Before The Agency*

Plaintiff filed an application for disability insurance benefits with the agency on July 23, 2001. AT 108–110. Following the denial of that application on September 27, 2001, AT 22–26, a hearing was conducted by ALJ Carl E. Stephan, beginning on

---

nel release surgery, in 1989 for the left hand, and later in 1992 on the right. AT 224. The record does not reflect the existence of any lingering effects of this latter condition.

4. It was Dr. Cicoria who performed the earlier surgery to repair plaintiff's rotator cuff tear. AT 200, 258.

May 9, 2003 and continuing to July 23, 2003, to address plaintiff's claim of entitlement to Social Security benefits. AT 430–527. During that hearing, testimony was elicited from the plaintiff as well as Peter Monsey, a vocational expert engaged by the agency to assist in the disability analysis. *Id.*

Following the hearing, ALJ Stephan issued a written decision, dated September 16, 2003, announcing his determination. AT 11–21. In that decision ALJ Stephan outlined his findings, based upon a *de novo* review of the available evidence, applying the now familiar five-step test for determining the issue of disability. *Id.* At step one of the disability algorythm, ALJ Stephan concluded that plaintiff had not engaged in substantial gainful employment during the relevant times.[5] AT 12. Proceeding to the second and third steps of the controlling test, ALJ Stephan concluded that plaintiff suffers from impairments of sufficient severity to substantially limit her ability to perform work related functions, including right shoulder pain, neck pain, and migraine headaches, but concluded that those impairments were not, either individually or in combination, sufficiently severe to meet or equal any of the listed, presumptively disabling conditions set forth in the governing regulations, 20 C.F.R. Pt. 404, Subpt. P, App. 1. AT 12–13.

After reviewing the available medical evidence regarding her condition, ALJ Stephan next determined plaintiff's residual functional capacity ("RFC"), concluding that despite her impairments and the resulting limitations presented she retains the ability to perform light work, with no limitations upon her ability to stand, sit and walk, provided that she is not required to lift more than ten pounds occasionally, or to climb ladders, scaffolds, or engage in other activities that would entail the use of her arms, and further that no more than rare overhead reaching with the right dominant upper extremity, no more than occasional reaching in all directions with the right dominant upper extremity, and no more than occasional manipulation with the right, dominant upper extremity, are involved. AT 17. Applying that RFC finding, guided by the testimony of a vocational expert, the ALJ concluded that plaintiff is unable to perform her past relevant work, described by the expert as semi-skilled and medium in its exertional requirements. The ALJ further concluded, in reliance upon the medical vocational guidelines set forth in the regulations (the "grid"), 20 C.F.R. Pt. 404, Subpt. P, App. 2, as a framework, that a finding of no disability was warranted. AT 17–19. That finding was buttressed by opinions offered by vocational expert Monsey who, when presented with hypothetical questions incorporating the ALJ's RFC findings, testified that there are jobs existing in sufficient numbers in the national and local economies, including as a counter clerk (photo finishing), a furniture rental clerk, a call out operator, and a surveillance systems monitor, which the plaintiff is capable of performing. AT 18–19. In arriving at his determination ALJ Stephan expressly rejected, as not fully credible, plaintiff's testimony of debilitating pain precluding her ability to perform work related functions. AT 19.

The ALJ's opinion became a final determination of the agency when, on November 18, 2005, the Social Security Administration Appeals Council denied plaintiff's request for review of that decision. AT 3–6.

---

5. Although plaintiff's last meaningful employment ended in March of 1999, she was briefly employed on a part-time basis during August and September of 2000 in an office setting. AT 148, 464.

B. *This Action*

Plaintiff commenced this action on December 23, 2005. Dkt. No. 1. Issue was thereafter joined on April 10, 2006 by the Commissioner's filing of an answer, accompanied by an administrative transcript of proceedings and evidence before the agency. Dkt. Nos. 3, 4. With the filing of plaintiff's brief on May 25, 2006, Dkt. No. 5, and that on behalf of the Commissioner on July 10, 2006, Dkt. No. 6, the matter is now ripe for determination, and has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(d).[6] *See also* Fed.R.Civ.P. 72(b).

III. *DISCUSSION*

A. *Scope of Review*

▇ A court's review under 42 U.S.C. § 405(g) of a final decision by the Commissioner is limited; that review requires a determination of whether the correct legal standards were applied, and whether the decision is supported by substantial evidence. *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir.2002); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir.2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir.1998); *Martone v. Apfel*, 70 F.Supp.2d 145, 148 (N.D.N.Y.1999) (Hurd, J.) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir.1987)). Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, his decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. *Martone*, 70 F.Supp.2d at 148. If, however, the correct legal standards have been applied and the ALJ's findings are supported by substantial evidence, those findings are conclusive, and the decision should withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact. *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir.1988); *Barnett v. Apfel*, 13 F.Supp.2d 312, 314 (N.D.N.Y. 1998) (Hurd, M.J.); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)); *Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir.2003). To be substantial, there must be " 'more than a mere scintilla' " of evidence scattered throughout the administrative record. *Richardson*, 402 U.S. at 401, 91 S.Ct. at 1427; *Martone*, 70 F.Supp.2d at 148 (citing *Richardson* ). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951)).

▇ When a reviewing court concludes that incorrect legal standards have

---

**6.** This matter has been treated in accordance with the procedures set forth in General Order No. 18 (formerly, General Order No. 43) which was issued by the Hon. Ralph W. Smith, Jr., Chief United States Magistrate Judge, on January 28, 1998, and subsequently amended and reissued by Chief District Judge Frederick J. Scullin, Jr., on September 12, 2003. Under that General Order an action such as this is considered procedurally, once issue has been joined, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

been applied, and/or that substantial evidence does not support the agency's determination, the agency's decision should be reversed. 42 U.S.C. § 405(g); *see Martone,* 70 F.Supp.2d at 148. In such a case the court may remand the matter to the Commissioner under sentence four of 42 U.S.C. § 405(g), particularly if deemed necessary to allow the ALJ to develop a full and fair record or to explain his or her reasoning. *Martone,* 70 F.Supp.2d at 148 (citing *Parker v. Harris,* 626 F.2d 225, 235 (2d Cir. 1980)). A remand pursuant to sentence six of section 405(g) is warranted if new, non-cumulative evidence proffered to the district court should be considered at the agency level. *See Lisa v. Sec'y of Dep't of Health and Human Servs.,* 940 F.2d 40, 43 (2d Cir.1991). Reversal without remand, while unusual, is appropriate when there is "persuasive proof of disability" in the record and it would serve no useful purpose to remand the matter for further proceedings before the agency. *See Parker,* 626 F.2d at 235; *see also Simmons v. United States R.R. Ret. Bd.,* 982 F.2d 49, 57 (2d Cir.1992); *Carroll v. Sec'y of Health and Human Servs.,* 705 F.2d 638, 644 (2d Cir. 1983).

B. *Disability Determination—The Five Step Evaluation Process*

The Social Security Act defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial

gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five step evaluative process to be employed in determining whether an individual is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. The first step requires a determination of whether the claimant is engaging in substantial gainful activity; if so, then the claimant is not disabled, and the inquiry need proceed no further. *Id.* §§ 404.1520(b), 416.920(b). If the claimant is not gainfully employed, then the second step involves an examination of whether the claimant has a severe impairment or combination of impairments which significantly restricts his or her physical or mental ability to perform basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations. *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1. If so, then the claimant is "presumptively disabled." *Martone,* 70 F.Supp.2d at 149 (citing *Ferraris v. Heckler,* 728 F.2d 582, 584 (2d Cir.1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's residual functional capacity ("RFC") precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). If it is determined that it does, then as a final matter the agency must examine whether the claimant can do any other work. *Id.* §§ 404.1520(f), 416.920(f).

218

The burden of showing that the claimant cannot perform past work lies with the claimant. *Perez v. Chater,* 77 F.3d 41, 46 (2d Cir.1996); *Ferraris,* 728 F.2d at 584. Once that burden has been met, however, it becomes incumbent upon the agency to prove that the claimant is capable of performing other work. *Perez,* 77 F.3d at 46. In deciding whether that burden has been met, the ALJ should consider the claimant's RFC, age, education, past work experience, and transferability of skills. *Ferraris,* 728 F.2d at 585; *Martone,* 70 F.Supp.2d at 150.

**C. *The Evidence In This Case***

In support of her challenge to the Commissioner's determination plaintiff raises several grounds, arguing that 1) certain opinions of her treating physicians, including Dr. Herman Peiris and Dr. William S. Reiter, were improperly discounted, and contrary opinions of non-examining professionals were impermissibly accorded greater deference than those of treating sources; 2) the ALJ improperly rejected plaintiff's subjective complaints of disabling pain, without either evidentiary support or proper explanation; 3) the ALJ's RFC findings are not supported by substantial evidence; and 4) the Commissioner failed to meet his burden at step five of the disability calculus, despite eliciting testimony from a vocational expert, since the hypotheticals posed to that expert did not approximate plaintiff's proven circumstances. As relief, plaintiff seeks a remand of the matter to the Commissioner, with a directed finding of disability, for the limited purpose of calculating benefits owed.

**1. *Treating Physicians***

Ordinarily, the opinion of a treating physician is entitled to considerable deference, provided that it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence. *Veino,* 312 F.3d at 588; *Barnett,* 13 F.Supp.2d at 316.[7] Such opinions are not controlling, however, if contrary to other substantial evidence in the record, including the opinions of other medical experts. *Halloran v. Barnhart,* 362 F.3d 28, 32 (2d Cir.2004); *Veino,* 312 F.3d at 588. Where conflicts arise in the form of contradictory medical evidence, their resolution is properly entrusted to the Commissioner. *Veino,* 312 F.3d at 588.

In deciding what weight, if any, an ALJ should accord to medical opinions, he or she may consider a variety of factors including "[t]he duration of a patient-physician relationship, the reasoning accompanying the opinion, the opinion's consistency with other evidence, and the physician's specialization or lack thereof[.]" *Schisler v. Sullivan,* 3 F.3d 563, 568 (2d Cir.1993) (discussing 20 C.F.R. §§ 404.1527, 416.927).

When a treating physician's opinions are repudiated, the ALJ must provide reasons for the rejection. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Failure to apply the appropriate legal standards for considering a treating physician's opinions is a proper basis for reversal and

7. The regulation which governs treating physicians provides:
> Generally, we give more weight to opinions from your treating sources ... If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply [various factors] in determining the weight to give the opinion.

20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

remand, as is the failure to provide reasons for rejection of his or her opinions. *Johnson,* 817 F.2d at 985–86; *Barnett,* 13 F.Supp.2d at 316–17.

It is true that the record contains an RFC assessment, prepared by Todd Mansfield, P.T., the plaintiff's physical therapist, which is significantly more restrictive than the RFC finding made by the ALJ in this instance. AT 346–49. That assessment form, for example, reflects the therapist's belief that plaintiff is unable to lift and carry more than ten pounds in general; should avoid all repetitive activity; is able to stand and/or walk, and can stand, for a total of only two hours per day in an eight hour work day, and can sit for only a similar period in a eight hour work day. AT 346–47. Undeniably, these findings are not entirely consistent with the ALJ's conclusions that plaintiff retains the capacity to perform light work, with additional restrictions.[8]

As plaintiff readily acknowledges, the RFC findings upon which she heavily relies would not in and of themselves would not be worthy of consideration as the opinions of a treating source, in light of an evaluator's status of a physical therapist. *See* 20 C.F.R. § 404.1513(d). Plaintiff argues, however, that the therapist's assessment was apparently reviewed by one of plaintiff's treating physicians, Dr. Peiris, and confirmed by him at least to some degree, thus elevating the assessment in stature and warranting treating source deference. AT 345, repeated at AT 350. Despite Dr. Peiris' rather tepid endorse-

ment of the therapist's opinions the ALJ was correct in regarding it as of limited value, since on its face the treating physician's approval fails to reference any particular portion of the assessment or to make a function-by-function analysis, instead merely expressing Dr. Peiris' opinion, *"tending"* to agree with the therapist's findings. *Id.* (emphasis added).

Significantly, the RFC evaluation of plaintiff's circumstances recorded by Dr. Reiter, her orthopedic surgeon, are generally consistent with the ALJ's findings, and thus were not rejected, as argued by the plaintiff. While plainly, Dr. Reiter has opined that plaintiff suffers from some degree of limitation in her right upper extremity, *see, e.g.,* AT 327, he states in his RFC findings that plaintiff is capable of lifting up to ten pounds occasionally, though less than ten pounds frequently; experiences no limitations in her ability to stand and/or walk, or to sit; is restricted in connection with her range of motion by her right shoulder impingement; should never climb; and should be limited in terms of balancing, kneeling, crouching and crawling to only occasional engaging in those activities. AT 323–27. Additionally, Dr. Reiter has also noted discerned limitations in plaintiff's ability to reach and engage in gross manipulation, but has reported no further limitations arising from her conditions. *Id.* Those opinions are largely congruent with the ALJ's RFC determination, which mirrors many of Dr. Reiter's findings. Accordingly, not only were Dr. Reiter's opinions not rejected by

---

**8.** By regulation light work is defined as follows:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm

or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

the ALJ, as plaintiff now argues, but in fact they lend considerable support to his RFC finding.

### 2. *Plaintiff's Subjective Testimony*

In support of her challenge to the Commissioner's determination, plaintiff also alleges that the ALJ's findings resulted from the improper and unexplained rejection of her claims of limitations due to the disabling pain which she experiences. Plaintiff's brief, however, provides no specific references to her hearing testimony or other portions of the record which are contrary to the ALJ's RFC findings, and thus were at least implicitly rejected or discounted by him.[9]

 An ALJ must take into account subjective complaints of pain in making the five step disability analysis. 20 C.F.R. §§ 404.1529(a), (d), 416.929(a), (d). When examining the issue of pain, however, the ALJ is not required to blindly accept the subjective testimony of a claimant. *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir.1979); *Martone*, 70 F.Supp.2d at 151 (citing *Marcus*). Rather, an ALJ retains the discretion to evaluate a claimant's subjective testimony, including testimony concerning pain. *See Mimms v. Heckler*, 750 F.2d 180, 185–86 (2d Cir.1984). In deciding how to exercise that discretion the ALJ must consider a variety of factors which ordinarily would be relevant on the issue of credibility in any context, including the claimant's credibility, his or her motivation, and the medical evidence in the record. *See Sweatman v. Callahan*, No.

96–CV–1966, 1998 WL 59461, at *5 (N.D.N.Y. Feb. 11, 1998) (Pooler, D.J. and Smith, M.J.) (citing *Marcus*, 615 F.2d at 27–28). In doing so, the ALJ must reach an independent judgment concerning the actual extent of pain suffered and its impact upon the claimant's ability to work. *Id.*

 When such testimony is consistent with and supported by objective clinical evidence demonstrating that claimant has a medical impairment which one could reasonably anticipate would produce such pain, it is entitled to considerable weight.[10] *Barnett*, 13 F.Supp.2d at 316; *see also* 20 C.F.R. §§ 404.1529(a), 416.929(a). If the claimant's testimony concerning the intensity, persistence or functional limitations associated with his or her pain is not fully supported by clinical evidence, however, then the ALJ must consider additional factors in order to assess that testimony, including: 1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms. 20 C.F.R. §§ 404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi).

 After considering plaintiff's subjective testimony, the objective medical evidence, and any other factors deemed relevant, the ALJ may accept or reject claimant's subjective testimony. *Martone*,

---

9. It would be most helpful to reviewing courts faced with similar arguments regarding the rejection of claimant pain complaints if agency ALJ's were encouraged to inquire during administrative hearings whether there is any claim that the plaintiff cannot work as a result of limitations caused by pain and, if so, to require specific testimony concerning the extent of the claimant's pain and the resulting limitations. Unfortunately, this does not appear to be a regular practice of most ALJs,

and no such inquiries were made in this instance.

10. In the Act, Congress has specified that a claimant will not be viewed as disabled unless he or she supplies medical or other evidence establishing the existence of a medical impairment which would reasonably be expected to produce the pain or other symptoms alleged. 42 U.S.C. § 423(d)(5)(A).

70 F.Supp.2d at 151; *see also* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4). If such testimony is rejected, however, the ALJ must explicitly state the basis for doing so with sufficient particularity to enable a reviewing court to determine whether those reasons for disbelief were legitimate, and whether the determination is supported by substantial evidence. *Martone,* 70 F.Supp.2d at 151 (citing *Brandon v. Bowen,* 666 F.Supp. 604, 608 (S.D.N.Y. 1987)). Where the ALJ's findings are supported by substantial evidence, the decision to discount subjective testimony may not be disturbed on court review. *Aponte v. Secretary, Dep't of Health & Human Servs.,* 728 F.2d 588, 591 (2d Cir.1984).

During the hearing plaintiff intimated that she experiences disabling pain which precludes her from working. *See, e.g.* AT 467. Plaintiff also testified that she aches all over, though mostly in her right shoulder and upper back area, requiring her to take Vioxx, a pain reliever, on a daily basis as well as Flexeril, as needed at least one to two times per week to address more severe pain. AT 467–68. Plaintiff also testified to taking Zoloft in order to address her depression. AT 467. Plaintiff has not, however, indicated what work-related limitations result from the pain which she experiences.

It is fairly evident that the plaintiff does suffer from some degree of discomfort as a result of her various medical conditions. The fact that she suffers from discomfort, however, does not automatically qualify her as disabled, since "disability requires more than mere inability to work without pain." *Dumas v. Schweiker,* 712 F.2d 1545, 1552 (2d Cir.1983).

█ In his decision, ALJ Stefan addressed plaintiff's claims of pain but noted plaintiff's acknowledgment to her care provider that her medications have helped to relieve her symptoms, and cause her no side affects. AT 19. The ALJ also re-counted plaintiff's daily activities, found by him to be inconsistent with the extent of pain testified to by her. AT 19. These findings are fully supported by the record and provide substantial evidence for the ALJ's rejection of plaintiff's subjective pain complaints, even assuming that they tend to support her contention that the pain which she experiences precludes her from performing work-related functions.

### 3. *RFC*

Plaintiff next argues that the ALJ's RFC finding is not supported by substantial evidence in the record. A claimant's RFC represents a finding of the range of tasks he or she is capable of performing notwithstanding the impairments at issue. 20 C.F.R. § 404.1545(a). An RFC determination is informed by consideration of a claimant's physical abilities, mental abilities, symptomology, including pain, and other limitations which could interfere with work activities on a regular and continuing basis. *Id.*; *Martone,* 70 F.Supp.2d at 150.

█ To properly ascertain a claimant's RFC, an ALJ must therefore assess plaintiff's exertional capabilities, addressing his or her ability to sit, stand, walk, lift, carry, push and pull. 20 C.F.R. §§ 404.1545(b), 404.1569a. Nonexertional limitations or impairments, including impairments which result in postural and manipulative limitations, must also be considered. 20 C.F.R. §§ 404.1545(b), 404.1569a; *see also* 20 C.F.R. Part 404, Subpt. P, App. 2 § 200.00(e). When making an RFC determination, an ALJ must specify those functions which the claimant is capable of performing; conclusory statements concerning his or her capabilities, however, will not suffice. *Martone,* 70 F.Supp.2d at 150 (citing *Ferraris,* 728 F.2d at 587). An administrative RFC finding can withstand judicial scrutiny only if there is substantial evidence in the record to support each

requirement listed in the regulations. *Martone,* 70 F.Supp.2d at 150 (citing *La-Porta v. Bowen,* 737 F.Supp. 180, 183 (N.D.N.Y.1990)); *Sobolewski v. Apfel,* 985 F.Supp. 300, 309–10 (E.D.N.Y.1997).

In this instance I have already reviewed at least one assessment of plaintiff's treating orthopedist, Dr. Reiter, and found it to be consistent with the ALJ's RFC finding. While there is other evidence in the record that similarly supports that RFC determination, the presence of opinions of a treating source consistent with the determination suffices to provide substantial evidence for that determination. *See Soto v. Barnhart,* 242 F.Supp.2d 251, 255–56 (W.D.N.Y.2003) (indicating that, in determining a claimant's RFC, the opinions of treating physicians are entitled to controlling weight).

### 4. *Vocational Testimony*

The last argument raised by the plaintiff concerns the ALJ's reliance upon testimony of the vocational expert in this action.

It is well-established that elicitation of testimony from a vocational expert is a proper means of fulfilling the agency's burden at step five of the disability test to establish the existence of jobs in sufficient numbers in the national and regional economy that plaintiff is capable of performing. *Bapp v. Bowen,* 802 F.2d 601, 604–05 (2d Cir.1986); *Dumas v. Schweiker,* 712 F.2d 1545, 1553–54 (2d Cir.1983); *Dwyer v. Apfel,* 23 F.Supp.2d 223, 229–30 (N.D.N.Y. 1998) (Hurd, M.J.) (citing *Pratts v. Chater,* 94 F.3d 34, 39 (2d Cir.1996)); *see also* 20 C.F.R. §§ 404.1566, 416.966. Use of hypothetical questions to develop the vocational expert's testimony is also permitted, provided that the questioning precisely and comprehensively includes each physical and mental impairment of the claimant accepted as true by the ALJ. *Varley v. Sec'y of Health & Human Servs.,* 820 F.2d 777, 779 (6th Cir.1987). If the factors set forth in the hypothetical are supported by substantial evidence, then the vocational expert's testimony may be relied upon by the ALJ in support of a finding of no disability. *Id.*

In this instance the hypothetical questions posed to the vocational expert are well supported by evidence in the record. The ALJ's hypothetical included characteristics associated with his RFC finding which, I have already found, was supported by substantial evidence in the record. Based upon the hypothetical presented, the vocational expert concluded that plaintiff was capable of performing four designated jobs notwithstanding her limitations. While plaintiff challenges the ALJ's failure to state, in his hypothetical, that the plaintiff is extremely limited in her ability to perform most activities with her right upper extremity, in fact the vocational expert was told that the hypothetical individual "could only rarely do any overhead reaching. They could only occasionally reach in other directions with the right upper extremity", further clarifying that the job should entail only occasional reaching with the right upper extremity and occasional repetitive use of that extremity. AT 483. This portion of the hypothetical posed to the expert is consonant with the evidence in the record and the ALJ's RFC finding.

To further buttress her argument in this regard, though without citing any supporting authority, plaintiff offers the naked assertion that the jobs identified by the vocational expert would out of necessity require usage of upper extremities. *See* Plaintiff's Brief (Dkt. No. 5) at 20. This contention, devoid of evidentiary or legal support, is simply insufficient to undermine the opinion of a vocational expert to the effect that despite the limitations associated with the plaintiff's condition, and particularly her inability to make more than occasional use of her right upper

extremity, she is nonetheless able to perform those jobs. This argument, then, provides no basis to set aside the Commissioner's determination.

## IV. *SUMMARY AND RECOMMENDATION*

Based upon a careful review of the record in this case, I find that the ALJ properly determined the plaintiff's RFC, and that finding is supported by substantial evidence in the record including, notably, the opinion of one of plaintiff's own treating sources. In arriving at that RFC determination and his ultimate finding of no disability, the ALJ also properly rejected plaintiff's subjective complaints of pain, and explained his rationale for doing so in his opinion. And, applying the RFC finding to the grid, used as a framework and supplemented by testimony of a vocational expert, the ALJ properly concluded that plaintiff is not disabled and thus does not qualify for the Social Security benefits sought in her application. Accordingly, it is hereby

RECOMMENDED, that defendants' motion for judgment on the pleadings be GRANTED, the Commissioner's determination of no disability AFFIRMED, and plaintiff's complaint be DISMISSED in all respects.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court within ten (10) days. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R.Civ.P. 6(a), 6(e), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993).

IT IS FURTHER ORDERED, that the Clerk of the Court serve a copy of this Report and Recommendation upon the parties in accordance with this court's local rules.

Dated: November 9, 2007
Syracuse, NY