WILLIAM F. KUNTZ, II, United States District Judge
Sharen R. Price ("Plaintiff) brings this action pursuant to 42 U.S.C. § 405(g) alleging the Commissioner of the Social Security Administration (the "Commissioner" or "Defendant") improperly denied Plaintiff's applications for Social Security Disability benefits. See Compl., ECF No. 1. Both parties move for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). See Mem. of Law in Supp. of Def.'s Mot. for J. on the Pleadings ("Def.'s Mot."), ECF No. 20; Mem. of Law in Supp. of PL's Cross Mot. for J. on the Pleadings ("Pl.'s Mot."), ECF No. 18. For the reasons set forth below, Plaintiff's motion is GRANTED.
BACKGROUND AND PROCEDURAL HISTORY
Plaintiff was born in 1950, and has a college education. Administrative Transcript pp. ("T.") 145, 150, ECF No. 7. She worked for the New York City Housing Authority from 1976 to 2007, as a housing assistant, and later in managerial positions. T. 31-33, 145, 163. As an assistant manager, a major function of her job was collecting rent and conducting inspections, and she spent about seventy-five percent of her time in the field collecting and doing inspections. T. 33. After retiring from the Housing Authority, she worked from May 2008 through February 2009, part-time, at a social services office providing childcare services for clients who dropped off their children. T. 33-34, 145. She reported working there four or five hours per day, three days per week. T. 34, 145, 165.
The relevant period of the Court's review is from February 1, 2009, Plaintiff's alleged onset date of disability, through March 31, 2014, the date Plaintiff was last insured for disability insurance benefits. See 20 CFR § 404.130 ; T. 150.
On February 9, 2009, shortly after the beginning of the relevant period, Plaintiff visited Queens Long Island Medical Group, P.C., for an oncology consultation, at which she denied lower back pain.[1] T. 402, 404. Plaintiff had normal musculoskeletal and neurological exam findings. T. 404. In the records of the examination, her primary care physician is listed as Chanchal Sabharwal, M.D. T. 402.
*520 On March 5, 2009, Plaintiff was examined by Lucille Lee, M.D., a radiation oncologist, and Plaintiff reported no physical complaints relevant to her spine, and the musculoskeletal exam revealed a normal gait, and no vertebral or costovertebral tenderness. T. 400.
On January 21, 2010, Plaintiff was treated by Charlene Andrews, M.D., for lower back pain for the first time, which Plaintiff reported had lasted for a few weeks. T. 364-66. Plaintiff described the severity of the pain as moderate. T. 365. The pain was relieved by rest. Id. Her triggers included standing straight, sitting, and changing positions. Id. She was able to fully extend and flex, and ambulate comfortably, but she could not sit comfortably. Id. Examination showed lumbar muscle tenderness. Id. Dr. Andrews diagnosed back ache, prescribed Robaxin, and planned for an x-ray. T. 366.
An x-ray collected on January 29, 2010, showed "severe disc degenerative changes are present at L2-L3 and L5-S1 including disc narrowing, increased sclerosis and large spur production." T. 360. The overall impression was "severe disc degenerative changes are present." Id.
Plaintiff presented the following month, on February 11, 2010, for a routine follow-up appointment with no complaints. T. 358. Dr. Andrews noted a plan to continue Plaintiff's medication. T. 359.
In a radiation medical follow-up note for a visit on May 14, 2010, Dr. Lee noted that "patient reports feeling generally well. She has no new medical problems. She has no pain or discomfort." T. 352.
Plaintiff next sought treatment for back pain on November 3, 2011, with Dr. Andrews. T. 298. Dr. Andrews noted Plaintiff's musculoskeletal system was normal upon exam and ordered additional x-rays of the lumbosacral spine. Id. The x-rays were taken on January 5, 2012, and showed findings consistent with moderately severe lumbosacral spondylosis with degenerative disc disease. T. 559-60.
On February 2, 2012, Plaintiff presented to Dr. Andrews complaining of neck pain and stiffness, without any other complaints. T. 557. The doctor assessed cervicalgia, for which she prescribed Flexeril and a heating pad. T. 558.
On June 8, 2012, Plaintiff treated with Dr. Sabharwal who, upon conducting a "health maintenance exam," found tenderness on palpation of the lumbosacral spine. T. 551, 553. Plaintiff's gait and stance were normal. T. 553. Dr. Sabharwal diagnosed backache possibly due to degenerative joint disease. Id.
On July 7, 2012, Plaintiff treated with Dr. Sabharwal for earache and reported that she was getting adequate exercise. T. 539.
On November 19, 2012, Plaintiff treated with Dr. Sabharwal for her hypertension. T. 519. Plaintiff reported getting adequate exercise. T. 520.
On June 26, 2013, an x-ray ordered by Dr. Sabharwal showed the following:
There is marginal vertebral endplate sclerosis with significant disc space narrowing at L1-L2, L2-L3 and L5-S1. Tiny endplate anterior osteophytes are noted at L2 and L3, L5 and S1. There is a straightening to reversal of the normal lordotic curvature, presumably related to muscle spasm and/or muscle contracture. There is no fracture or dislocation seen. There is no evidence of blastic or lytic lesions.
T. 508. The overall impression was "moderately severe degenerative disc disease from the level of L1 through L5-S1." T. 508-09. Dr. Sabharwal diagnosed backache possibly due to degenerative joint disease. T. 512.
On June 10, 2013, Plaintiff filed an application for Title II disability benefits alleging *521 disability beginning February 1, 2009, due to degenerative disc disease and osteoarthritis of the spine. PL's Mot at 1; T. 132, 144.
Plaintiff reported in her Function Report dated July 1, 2013, that she continued to walk her dog, run errands, do household chores, and drive and travel independently. T. 152-59. She also reported she had experienced back pain for the preceding five years, with the pain getting progressively worse, yet she was not receiving any medical treatment for the pain at the time of the Function Report. T. 160. She also reported taking two Aleve pills per day for the pain on and off for the past five years, and, though it took three-four hours to relieve the pain, the Aleve was sufficient to relieve the pain for one day. T. 161. She reported also occasionally using hot and cold pads to relieve the pain. T. 162.
On July 17, 2013, Plaintiff presented to a consultative internal medicine examination per the request of the Division of Disability Determinations. T. 196. The consultative examiner was Joyce Graber, M.D. Id. At the examination, Plaintiff complained of a history of low back problems that worsened over the last three years. Id. Plaintiff reported to Dr. Graber that she was in pain most days at a level seven on a scale of one to ten. Id. She reported living with her son, cooking four times per week, cleaning, doing laundry once per week, and going shopping four times per week. Id. She also acknowledged showering and dressing herself daily, watching television, going out to the supermarket, movies, and meetings, and socializing with friends. Id.
Plaintiff did not present with any acute distress, and had a normal gait and stance. T. 197. She was able to walk on heels and toes without difficulty and could do a full squat. Id. Her lumbar spine showed limited flexion extension to about eight degrees, and she reported pain with this movement. T. 198. Her lateral flexion was intact. Id. Her rotation was intact, but she reported pain. Id. Straight leg raise testing was negative bilaterally, and the remainder of her musculoskeletal findings were unremarkable. Id. Dr. Graber detected no motor or sensory deficits, and observed Plaintiff retained full (5/5) strength in the upper and lower extremities. Id. X-rays of Plaintiff's lumbar spine revealed degenerative changes. T. 198, 200. Dr. Graber opined Plaintiff had no physical limitations. T. 198.
On July 23, 2013, Dr. Sabharwal, Defendant's treating physician, filled out a "Lumbar Spine Residual Functional Capacity Questionnaire." T. 203, 208. Dr. Sabharwal stated Plaintiff had limitations resulting from degenerative disc disease from L1 through L5-S1. T. 203. Dr. Sabharwal indicated she had seen Plaintiff every three months for one year. Id. Dr. Sabharwal indicated clinical findings included tenderness on palpation of the lumbosacral spine. Id. Dr. Sabharwal also noted an x-ray of the lumbosacral spine suggested moderately severe degenerative disc disease from L1 to L5-S1. T. 204. Dr. Sabharwal noted objective findings included decreased range of motion on the left side, tenderness, muscle spasm, and crepitus. T. 205. She identified Plaintiff's symptoms as intermittent back pain with an intensity of seven out of ten, non-radiating in nature but increasing with prolonged standing, sitting, and walking. T. 204. She also noted that Plaintiff's pain could "occasionally" (defined on the Questionnaire as 6% to 33% of an eight-hour work day) interfere with her ability to concentrate. T. 205. Dr. Sabharwal found that Plaintiff could not stand more than fifteen minutes at a time and could sit and stand/walk less than two hours total in an eight-hour work day. T. 206. In addition, Dr. Sabharwal indicated Plaintiff's impairment has lasted or could be expected to last at least 12 months, and opined *522 the following limitations: she could walk five blocks without rest or severe pain; she could sit for only ten minutes at a time; she could only stand fifteen minutes at one time; she would need brief periods of walking around every ten minutes in an eight-hour workday, walking ten minutes each time; she would need a job permitting shifting positions at will from sitting, standing, or walking; she would frequently need unscheduled breaks lasting thirty minutes during an eight-hour workday; she could frequently lift less than ten pounds and occasionally lift ten pounds but never more; she could rarely twist and stoop but could occasionally crouch/squat, and climb ladders and stairs; she would have good and bad days; and she would miss work more than four days per month. T. 206-08.
On August 28, 2013, during a follow-up visit for hypertension, Plaintiff treated with Dr. Sabharwal for, inter alia , severe back pain described as constantly throbbing with increased pain standing and walking. T. 492. Examination again showed tenderness in the lumbar spine, and Plaintiff was referred to pain management. T. 493.
On August 9, 2013, Plaintiff's claim for disability was denied. T. 62.
On September 20, 2013, Plaintiff began care with pain management specialist Reginald Rousseau, M.D. for lower back pain she reportedly experienced over the last ten years. T. 293. Plaintiff described her pain as dull and mostly non-radicular, although it did travel to the right side of the hip, and it had improved in the past with physical therapy and medication management. Id. Dr. Rousseau's examination revealed mild tenderness of the lumbar spine with increased pain on flexion and extension, as well as positive right hip and iliac tenderness on palpation. Id. Plaintiff retained full motor strength in the bilateral lower extremities and the doctor noted no gross focal deficits. Id. Dr. Rousseau also noted a steady heel-to-toe gait, mildly positive straight leg raise testing in the bilateral lower extremities, and her sensation was grossly intact to light touch. Id. , The doctor assessed lumbosacral spondylosis without myelopathy, ordered magnetic resonance imaging (MRI), recommended physical therapy and noted a lumbar epidural would be considered after the imaging was studied. Id. ,
Plaintiff saw Dr. Sabharwal on October 4, 2013, complaining of constant, but non-radiating, back pain with an eight out of ten intensity. T. 490. She was in no acute distress, and the doctor noted her lumbar spine was tender to palpation. T. 491. The doctor again assessed backache possibly due to degenerative joint disease and provided a physical therapy referral and referral for MRI. T.491.
In a letter from Dr. John Himmlefarb outlining the results of the MRI to Dr. Sabharwal, the MRI revealed the following impression: slight right convex lumbar scoliosis with some loss of the normal lordosis ; discogenic degenerative changes throughout the lumbar spine, but most prominent at the L2-3 through L5-S1 levels; central posterior disc herniation superimposed upon a posterior disc bulge at the L5-S1 level; posterior disc bulges at the L3-4 and L4-5 levels; far left posterolateral disc herniation at the L2-3 level superimposed upon a posterior disc bulge; posterior disc bulge at the L1-2 level; and enlarged heterogeneous uterus with an enlarged central stripe. T. 481-82.
Plaintiff returned to Dr. Rousseau on November 1, 2013, following her MRI. T. 292; see T. 213-15 (MRI findings from October 2013). Plaintiff's spine was mildly tender to palpation with limited range of motion, increased pain on flexion and extension, and positive right hip tenderness. T. 292. Plaintiff retained full motor *523 strength bilaterally in the lower extremities. Id. The doctor assessed lumbosacral spondylosis without myelopathy, recommended physical therapy, and scheduled a right lumbar medial branch steroid injection. Id. The injection was administered a few days later without complication. T. 274. On November 20, 2013, Dr. Rousseau noted the injection was effective, and reduced her pain to three out of ten. T. 291. Examination revealed mild tenderness, limited range of motion, and increased pain on flexion and extension; there was full motor strength in both lower extremities. Id. Dr. Rousseau assessed lumbosacral spondylosis without myelopathy, ordered a second injection, and recommended physical therapy. Id.
On November 22, 2013, Plaintiff treated with Dr. Sabharwal for constant throbbing back pain radiating to the right leg described as seven out of ten in intensity. T. 476. The purpose of this visit was to follow up on MRI results. Id. Examination showed the lumbar spine tender on palpation. Id. Plaintiff was reportedly getting adequate exercise. Id. Dr. Sabharwal assessed backache possibly due to degenerative joint disease and prescribed naproxen, and opined Plaintiff should "avoid lifting weights or back strain." Id.
On November 26, 2013, Plaintiff saw physical therapist Paul Espocia, reporting back pain and noting physical therapy had been helpful in the past. T. 473. Her recent epidural injection helped "for some days" but she continued to experience pain and stiffness, which was worse with prolonged sitting and upon getting up. Id. She rated her pain at a seven out of ten Id.Aleve no longer worked for her. Id. Mr. Espocia reported her posture, balance, and gait were unremarkable. Id. Her lumbar spine was nontender upon palpation, and she had intact sensation. Id. Her lumbar spine ranges of motion were: flexion from 0-35; extension 0-15; and lateral flexion and rotation within functional limits. Id. Manual muscle testing revealed 5/5 strength in the lumbar spine paraspinals. Id. The physical therapist noted a goal to increase her ranges of motion and functional mobility. T. 474. He recommended back exercises and use of a bicycle. Id.
Plaintiff received another lumbar facet medial branch block injection on December 17, 2013, without complication. T. 239. Around the same time, Plaintiff reported moderate back pain to physical therapist Christine Samuels, who noted Plaintiff was managing well with pain tolerance. T. 462. The epidural injection helped her "some days," and she reported still experiencing pain and stiffness in the back pain, which was worse with prolonged sitting and upon getting up. Id.
Plaintiff complained of throbbing, non-radiating back pain to Dr. Sabharwal on February 5,2014. T. 455. Her lumbar spine was tender to palpation. T. 456. The doctor continued to assess a backache possibly due to degenerative joint disease. Id. She advised Plaintiff to engage in regular aerobic exercise and work up to at least three sessions of thirty minutes of exercise per week. T. 457.
On May 9, 2014, about a month after her insured status expired, Plaintiff presented to Dr. Sabharwal. T. 442. A tender right index finger was the sole musculoskeletal finding. T. 443. No abnormal findings or diagnoses were noted regarding Plaintiff's spine. T. 442-43.
On July 15, 2014, Plaintiff saw Dr. Sabharwal for an "annual risk assessment exam," during which the doctor noted normal neurological findings and advised Plaintiff on diet, exercise, and weight reduction. T. 439, 441. No abnormal findings or diagnoses were noted regarding Plaintiff's spine. T. 439-41. Plaintiff reported getting adequate exercise. T. 439.
*524 Following the denial of her claim, Plaintiff requested a hearing, which was held on August 11, 2014. T. 26-50. At the hearing, Plaintiff testified she can stand for about 10 minutes before she needs to lean against something, and she needs to constantly change positions. T. 40-41. A vocational expert, Marianne Marracco, testified someone with Plaintiff's age, education, work experience, who is limited to light work activity but must take a five-minute break every hour to move about, could have performed work as a housing manager and office manager/assistant manager. T. 43-44.
On November 6, 2014, Administrative Law Judge ("ALJ") Margaret L. Pecoraro denied Plaintiff's application via written decision on November 6, 2014. See T. 10-22. The ALJ found
[T]he claimant's allegations are not substantiated by the record and are therefore, not wholly credible. The claimant's longitudinal medical history is not consistent with the allegation that she is restricted from all work activity. The medical records simply fail to confirm the accuracy of the claimant's assertions and hearing testimony. Although the claimant alleged functional limitations, those subjective complaints were not adequately supported by objective medical evidence. There is no evidence that the claimant's impairments resulted in limitations so severe that she could not engage in any work activity.
T.20.
The Appeals Council denied Plaintiff's request for review on August 17, 2016, rendering the ALJ's decision the final decision of the Commissioner. T. 1-3. Plaintiff commenced the present action on October 7, 2016. ECF No. 1.
DISCUSSION
I. Standard of Review
When a claimant challenges the Social Security Administration's ("SSA") denial of disability benefits, the Court's function is not to evaluate de novo whether the claimant is disabled, but rather to determine "whether the correct legal standards were applied and whether substantial evidence supports the decision." Butts v. Barnhart , 388 F.3d 377, 384 (2d Cir. 2004), amended on reh'g , 416 F.3d 101 (2d Cir. 2005) ; see also 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive ...."); Moran v. Astrue , 569 F.3d 108, 112 (2d Cir. 2009) (applying a "substantial evidence" standard of review). Substantial evidence is "more than a mere scintilla"; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales , 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting Consol. Edison Co. of N.Y., Inc. v. NLRB , 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) ). The substantial evidence test applies not only to the Commissioner's factual findings, but also to inferences and conclusions of law to be drawn from those facts. See Carballo ex rel. Cortes v. Apfel , 34 F.Supp.2d 208, 214 (S.D.N.Y. 1999) (Sweet, J.). In determining whether the record contains substantial evidence to support a denial of benefits, the reviewing court must examine the entire record, weighing the evidence on both sides to ensure that the claim "has been fairly evaluated." Brown v. Apfel , 174 F.3d 59, 62 (2d Cir. 1999) (quoting Grey v. Heckler , 721 F.2d 41, 46 (2d Cir. 1983) ).
It is the function of the SSA, not the federal district court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant."
*525 Carroll v. Sec'y of Health & Human Servs. , 705 F.2d 638, 642 (2d Cir. 1983) (citing Richardson , 402 U.S. at 399, 91 S.Ct. 1420 ); see also Clark v. Comm'r of Soc. Sec. , 143 F.3d 115, 118 (2d Cir. 1998) (noting that "it is up to the agency, and not th[e] court, to weigh the conflicting evidence in the record"). Although the ALJ need not resolve every conflict in the record, "the crucial factors in any determination must be set forth with sufficient specificity to enable [the reviewing court] to decide whether the determination is supported by substantial evidence." Calzada v. Asture , 753 F.Supp.2d 250, 268-69 (S.D.N.Y. 2010) (Sullivan, J.) (internal quotation marks omitted) (citing Ferraris v. Heckler , 728 F.2d 582, 587 (2d Cir. 1984) ).
To fulfill this burden, the ALJ must "adequately explain his reasoning in making the findings on which his ultimate decision rests" and must "address all pertinent evidence." Kane v. Astrue , 942 F.Supp.2d 301, 305 (E.D.N.Y. 2013) (Kuntz, J.) (quoting Calzada , 753 F.Supp.2d at 269 ). "[A]n ALJ's failure to acknowledge relevant evidence or to explain its implicit rejection is plain error." Id. (internal citations and quotation marks omitted). Remand is warranted when "there are gaps in the administrative record or the ALJ has applied an improper legal standard." Rosa v. Callahan , 168 F.3d 72, 82-83 (2d Cir. 1999) (internal quotation marks and citation omitted).
II. Determination of Disability
A. Applicable Law
For purposes of disability benefits, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment in question must be of "such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id. § 423(d)(2)(A).
To determine whether a claimant is disabled, the Commissioner must apply the five-step sequential process set forth in 20 C.F.R. § 404.1520. See, e.g., Rosa , 168 F.3d at 77 (laying out the five-step process for evaluating disability claims). The claimant bears the burden of proving the first four steps, while the burden shifts to the Commissioner at the fifth step. Id. First, the Commissioner must determine whether claimant is engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is not so engaged, the second step is to determine whether the claimant has a "severe medically determinable physical or mental impairment." Id. § 404.1520(a)(4)(ii). If the claimant has such an impairment, the third step is to determine whether the impairment or combination of impairments meets or equals one of the listings in Appendix 1 of the regulations. Id. § 404.1520(a)(4)(iii). If the claimant's impairment does not match any of the listings, the fourth step is to determine whether the claimant's RFC allows the claimant to perform past relevant work ("Step Four"). Id. § 404.1520(a)(4)(iv). If the claimant cannot perform past relevant work, the final step is to determine whether the claimant can perform another job based on his or her RFC, work experience, age, and education. Id. § 404.1520(a)(4)(v).
B. The ALJ's Decision
The ALJ followed the five-step procedure, determined Plaintiff's residual functional capacity ("RFC") under 20 C.F.R. § 404.1520, and found as follows: (1) Plaintiff had not engaged in substantial gainful *526 activity during the alleged onset date of February 1, 2009 through her last insured date on March 31, 2014; (2) Plaintiff had the following severe impairment: lumbosacral spondylosis without myelopathy ; (3) Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ; (4) Plaintiff had the RFC to perform less than the full range of light work,[2] could lift/carry twenty pounds occasionally and ten pounds frequently, and in an eight hour workday, could sit, stand and walk for a maximum of six hours each, with a five minute break every hour to stretch or move about; and (5) that through the date of last insured, Plaintiff was capable of performing her past relevant work as an assistant manager/office manager and housing manager, as actually and generally performed. T. 12-22. As a result, the ALJ found Plaintiff was not disabled under the Act. Id. at 22.
Plaintiff moves for judgment on the pleadings, arguing: (1) the ALJ's RFC finding is unsupported by substantial evidence; and (2) the ALJ's finding that the claimant's RFC allows the claimant to perform past relevant work is unsupported by substantial evidence (Step Four). Pl's Mot. at 1. Defendant cross-moves for summary judgment on pleadings, arguing: (1) the ALJ's decision that Plaintiff was not disabled was supported by substantial evidence; and (2) the ALJ properly denied Plaintiff's claim at Step Four. Def.'s Mot. at 14-24.
C. Analysis
RFC is "what an individual can still do despite his or her limitations." Pardee v. Astrue , 631 F.Supp.2d 200, 210 (N.D.N.Y. 2009) (Mordue, J.) (quoting Melville v. Apfel , 198 F.3d 45, 52 (2d Cir. 1999) ). An ALJ must determine an individual's RFC after considering her "physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." Id. (citing 20 C.F.R. § 404.1545(a) ). Here, the ALJ determined Plaintiff, through the date last insured, had the RFC to perform less than the full range of light work as defined in 20 C.F.R § 404.1567(b). See Tr. 13. The claimant could lift/carry twenty pounds occasionally and ten pounds frequently, and in an eight-hour workday, could sit, stand and walk for a maximum of six hours each, with a five minute break every hour to stretch or move about. Id. The Social Security Policy Interpretation Ruling Titles II & XVI states, "[o]rdinarily, RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P, 1996 WL 374184, at *1, (S.S.A. July 2, 1996).
In reviewing the ALJ's determination, the Court considers whether it "affords an adequate basis for meaningful *527 judicial review, applies the proper legal standards, and is supported by substantial evidence such that additional analysis would be unnecessary or superfluous." Cichocki v. Astrue , 729 F.3d 172, 177 (2d Cir. 2013).
Plaintiff first argues the RFC is unsupported by substantial evidence as the ALJ improperly evaluated the opinion evidence and "did not provide an accurate and logical bridge tying the evidence to the RFC determination." PL's Mot. at 8. In particular, Plaintiff takes issue with the weight the ALJ assigned the consultative examiner, Dr. Graber, who found Plaintiff had no physical limitations, T. 198, versus Plaintiff's treating physician, Dr. Sabharwal, who found Plaintiff could sit, stand and walk for less than two hours in an eight-hour workday, T. 206. Plaintiff argues the treating physician's opinion should have been entitled to significantly more weight, and the RFC should have reflected this greater deference. Pl.'s Mot. at 8.
Defendant argues the ALJ's RFC finding is supported by substantial evidence. Def.'s Mot. at 14. In response to Plaintiff's arguments, Defendant argues that Dr. Sabharwal's opinion was not entitled to controlling weight because the "ALJ's decision demonstrates that she properly considered its deficient supportability, and its inconsistency with the record as a whole." Def.'s Mot. at 16.
It is the task of the ALJ to resolve conflicts in the medical evidence. Cage v. Comm'r of Soc. Sec. , 692 F.3d 118, 122 (2d Cir. 2012) ("[W]e defer to the Commissioner's resolution of conflicting evidence." (citation omitted) ). While "[g]enerally, [an ALJ should] give more weight to medical opinions from ... treating sources," where the opinion from the treating physician is "inconsistent with the other substantial evidence in [the] case record," the ALJ must determine the weight to give the medical opinion as outlined in 20 C.F.R. § 404.1527. 20 C.F.R. § 404.1527(c)(2) ; see Tricarico v. Colvin , 681 Fed.Appx. 98, 100 (2d Cir. 2017) ("[T]he ALJ need not grant the treating physician's assessment controlling weight where the opinion is inconsistent with other evidence in the record, including the opinions of other medical experts." (citation omitted) ). If a treating physician's opinion is not given controlling weight by the ALJ because it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques and is inconsistent with the other substantial evidence in the case record, then the ALJ must evaluate how much weight to afford the treating medical opinion and other medical opinions using several factors. See Shaw v. Chater , 221 F.3d 126, 134 (2d Cir. 2000) ; Marinello v. Comm'r of Soc. Sec. , 98 F.Supp.3d 588, 595 (E.D.N.Y. 2015) (Kuntz, J.). These factors are: (1) length of the treatment and frequency of the examination; (2) the nature and extent of the treatment relationship, including the length of the relationship and the frequency of examination; (3) the evidence in support of each opinion, such as medical signs, laboratory findings, and more complete explanations; (4) the extent to which the opinion is consistent with the record as a whole; (5) whether the medical provider is a specialist; and (6) any other relevant factors. 20 C.F.R. §§ 404.1527(c), 416.927(c). The Second Circuit has instructed that remand is appropriate "when the Commissioner has not provided 'good reasons' for the weight given to a treating physician[']s opinion," or when "opinions from ALJs [ ] do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion." Halloran v. Barnhart , 362 F.3d 28, 33 (2d Cir. 2004) ; Marinello , 98 F.Supp.3d at 595.
It is indisputable that Dr. Sabharwal's assessment conflicts with that of Dr. Graber, and the ALJ identifies areas in Plaintiff's *528 medical records that she believes are inconsistent with Dr. Sabharwal's ultimate assessment. Therefore, it was reasonable that the ALJ did not give controlling weight to Dr. Sabharwal's opinion. T. 21. However, while the ALJ states she gave "some" weight to Dr. Sabharwal's opinion, id. , this Court finds the ALJ's explanation of that weight lacking given the vast difference between Dr. Sabharwal's opinion and the ALJ's RFC finding. Accordingly, for the reasons discussed below, the case must be remanded to the ALJ for further consideration of Dr. Sabharwal's opinion in light of this Court's analysis. See e.g., Balodis v. Leavitt , 704 F.Supp.2d 255, 265-67 (E.D.N.Y. 2010) (Bianco, J.) (remanding case for failure by ALJ in providing good reasons for not crediting the opinion of treating physician and not discussing how much weight, if any, would be given to the opinion).
Given that the ALJ did not give Dr. Sabharwal's opinion controlling weight, the ALJ was required to address the six factors outlined above in determining how much weight to give to Dr. Sabharwal's opinion under 20 C.F.R. § 404.1527. First, Dr. Sabharwal had an on-going doctor-patient relationship with Plaintiff and saw Plaintiff periodically during the relevant period, which the ALJ notes in her opinion. See, e.g. , T. 492-93, 510-13, 539-40, 551-54. Second, regarding the nature and extent of the treatment, Dr. Sabharwal was Plaintiff's primary care physician during the relevant time period, and the Administrative Transcript contains several records of visits Plaintiff had with Dr. Sabharwal in which Plaintiff's back complaints were discussed. See id. Third, regarding supportability, Plaintiff's medical records show x-rays and MRIs ordered and considered by Dr. Sabharwal during the relevant time period. See, e.g. , T. 481-82, 508-09. Notably, however, the ALJ never discusses Dr. Sabharwal's opinion from November 2, 2013, following an MRI. See T. 475-77.
The ALJ focuses primarily on the fourth factor, consistency with other medical evidence, when evaluating the weight to give Dr. Sabharwal's opinion and notes areas where she finds Dr. Sabharwal's opinion inconsistent with medical evidence. First, the ALJ notes, "[a]lthough the record indicates positive findings on MRI studies and indication of pain and tenderness, the record indicates that the claimant's pain started progressing in the latter part of 2013 and the claimant's treatment has been conservative." T. 20. However, "[n]either the trial judge nor the ALJ is permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion," and the use of conservative medical interventions and over-the-counter, rather than prescription, medications is not "substantial evidence that plaintiff was not physically disabled during the relevant period." Shaw , 221 F.3d at 134. Additionally, there is evidence that Plaintiff was suffering from back pain prior to 2013 and was first diagnosed with "severe disc degenerative changes ... including disc narrowing, increased sclerosis and large spur production" in 2010. See T. 360.
Second, the ALJ states the "[t]he record is replete with physical examinations where the claimant's gait and stance are normal, there is no motor dysfunction, nor muscle atrophy, or sensory or reflect abnormalities." T. 21. However, Dr. Sabharwal's report is not inconsistent with these records. See T. 205 (indicating no muscle atrophy or normal gait).
Third, the ALJ's decision also points to Plaintiff's daily activities as inconsistent with Dr. Sabharwal's findings, noting that "claimant indicated her daily activities include taking care of [her] mother including errands with and for her, driving, and shopping. Additionally, treating *529 notes indicate Plaintiff should exercise." T. 21. Without more explanation, it is not clear from the ALJ's decision how these activities are inconsistent with Dr. Sabharwal's findings. "Exercise" means drastically different things to different people, based on age, ability, and medical conditions. The same could be said of "errands." "Driving" could span from a length of a few minutes over the course of a few blocks to virtually any length of time or distance. The citations to these activities, without more, do not necessarily render Dr. Sabharwal's findings inconsistent, nor, for that matter, do they necessarily support an RFC finding that Plaintiff "could sit, stand, and walk for a maximum of 6 hours each." T. 13. To the extent the ALJ was unsure about the nature and extent of Plaintiff's activities and whether they were inconsistent with Dr. Sabharwal's findings, the "ALJ may not reject a treating physician's conclusions for lack of clear findings without first attempting to fill in the gaps in the administrative record." Kane v. Astrue , 942 F.Supp.2d 301, 311 (E.D.N.Y. 2013) (Kuntz J.) (citing Rosa v. Callahan , 168 F.3d 72, 79 (2d Cir. 1999) ). "It is the rule in our circuit that 'the ALJ, unlike a judge in a trial, must... affirmatively develop the record' in light of 'the essentially non-adversarial nature of a benefits proceeding.' " Pratts v. Chater , 94 F.3d 34, 37 (2d Cir. 1996) (quoting Echevarria v. Sec'y of HHS , 685 F.2d 751, 755 (2d Cir. 1982) ). This duty arises from the agency's regulatory obligation to develop a complete medical record before making a disability determination, 20 C.F.R. § 404.1512(d)-(f), and exists even where, as here, the claimant is represented by counsel. Pratts , 94 F.3d at 37.
The fifth factor to consider is whether Dr. Sabharwal offered a medical opinion about medical issues related to her specialty. The ALJ's decision does not discuss Dr. Sabharwal's specialty, if any. 20 C.F.R. § 404.1527(c)(5).
The sixth factor requires consideration of any other relevant factors, "[f]or example, the amount of understanding of our disability programs and their evidentiary requirements that a medical source has ... and the extent to which a medical source is familiar with the other information in [the] case record...." 20 C.F.R. § 404.1527(c)(6). Such factors are not discussed in the ALJ's decision.
While the ALJ's decision reports that both Dr. Graber's and Dr. Sabharwal's reports were accorded "some weight," because the ALJ's opinion did not "comprehensively set forth reasons for the weight assigned to a treating physician's opinion," this Court finds remand is appropriate. Halloran , 362 F.3d at 33. Therefore, this Court does not reach the issue of whether the ALJ properly evaluated Plaintiff's disability claim at Step Four.
CONCLUSION
For the reasons stated herein, the Commissioner's motion for judgment on the pleadings, ECF No. 19, is hereby DENIED, and Plaintiff's cross-motion for judgment on the pleadings, ECF No. 17, is hereby GRANTED. The Court hereby REMANDS this action to the Social Security Administration for further administrative proceedings consistent with this opinion.
SO ORDERED.

Plaintiff suffered from breast cancer and several of her medical records document appointments related to her cancer treatment. While only evidence relating to Plaintiff's back impairment is relevant for the purposes of this appeal, any medical documentation included in the Administrative Transcript was considered by the Court.

"Light work involves lifting no more than 20 pounds at a time With frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).